STATE of Minnesota, Respondent,

v.

Douglas Miles WINCHELL, Appellant.

No. C9–84–345.

Court of Appeals of Minnesota.

July 3, 1984.

Review Granted Sept. 12, 1984.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Duluth, Donovan W. Frank, Asst. County Atty., Virginia, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Defendant appeals from sentencing based on a conviction for aggravated robbery, Minn.Stat. § 609.245 (1982), a severity level VII offense. Defendant had a criminal history score of four, arising from prior convictions and a status of probation at the time of the offense. The presumptive sentence under Minn. Sentencing Guidelines is 65 months (in a range of 60–70 months) with the sentence executed. The trial court imposed a 130 month prison sentence and defendant claims this double departure was not justified by aggravating circumstances. The state contends that circumstances listed in a departure report of the trial court were sufficient to support the sentence. We modify the sentence to comply with the Sentencing Guidelines.

## FACTS

Defendant, Douglas M. Winchell, was charged with aggravated robbery, assault, and burglary, all as the result of conduct in 1980 at the home of his former girlfriend in St. Louis County. His three-year absence from Minnesota delayed prosecution on the complaint. About one month after his arrest in September 1983, he pled guilty to the robbery count and other charges were dismissed.

Winchell and William C. Santeramo entered the Susan Olson apartment at about 2:00 a.m. on October 15, 1980. Until shortly before the incident, Winchell had lived at this home with Olson and her four-year old daughter, Shannon. He had a parent-like relationship with Shannon.

When the entry occurred, Olson and her daughter were at home. Also present was Leon A. Pelto, a boyfriend who had just moved in with Olson.

Winchell pushed open a door to the home with his shoulder. He and Santeramo entered, each carrying a gun. Winchell's uncontradicted testimony indicated the guns were unloaded .22 rifles. Santeramo wore a ski mask but Winchell's face was uncovered.

The men took $500 cash and stereo equipment valued at about $1,000. The equipment was returned a week later through an acquaintance of the men.

The robbers had Olson and Pelto lay on the floor and Winchell tied them with wet strips of a towel fabric. Winchell testified that the two were not tied "real tight," but "just so that we had enough time to get out of the driveway and leave." Santeramo ripped the phone from the wall when the men left. Winchell said the entry occurred at 2:00 a.m., and a police report said Olson called on the matter at about 2:55 a.m.

Winchell testified that he pointed a rifle at Olson after entering her house. The

dismissed assault charge dealt with the pointing of a gun. The complaint stated a report of Olson that Winchell "put the gun up to her head" before demanding that the adults lay on the floor. Winchell testified that he did not put the gun to her head.

Winchell reported that Shannon, Olson's daughter, came on the scene from another room. He and Olson, Winchell claims, told Shannon that they were playing a game. He said that Shannon never cried or acted afraid. A strip of cloth was looped and put "loosely" around Shannon's ankle and connected to her mother.

The complaint includes Olson's report that Santeramo asked Winchell if the men should rape Olson and that Winchell said they didn't have time. Winchell testified that Santeramo made no such remark.

The trial court filed a departure report which listed these four factors as "substantial and compelling reasons" justifying departure:

1. The defendant gratuitously inflicted particular cruelty on the victims during the course of the Aggravated Robbery. Specifically, all three victims were tied up and were told to lay face down while the defendant put a gun to the head of the victim, Susan Gayle Olson;

2. One of the victims in the offense of Aggravated Robbery was a four year old girl, who was particularly vulnerable due to her age, and witnessed the entire crime in addition to being tied up;

3. The Aggravated Robbery was committed in the privacy and security of the victim's own home, and it, therefore, invaded the victims' zone of security and privacy that surrounded that home. The victims were subjected to particular cruelty by the extreme psychological terror and fear that they experienced, which is not usually associated with the crime of Aggravated Robbery;

4. The victims were left tied up, laying in their home at the conclusion of the Aggravated Robbery.

The report stated that the aggravating factors were circumstances "not normally associated" with the claim of aggravated robbery.

### ISSUE

Did the offense of defendant involve substantial and compelling circumstances to justify doubling the presumptive sentence under Minn. Sentencing Guidelines?

### ANALYSIS

■■■ The trial court has authority to depart from a presumptive sentence, provided the offense involves "substantial and compelling circumstances." *State v. Garcia*, 302 N.W.2d 643 (Minn.1981); Section II.D, Minn. Sentencing Guidelines; Rule 27.03(4)(C), Minn.R.Crim.P. If the record supports findings that those circumstances exist, a departure will be modified only when a full review prompts the appellate court to "have a strong feeling" that the sentence is disproportional to the offense. *State v. Schantzen*, 308 N.W.2d 484 (Minn. 1981).

■■■ The trial court may not depart when substantial and compelling circumstances are absent. It "shall" in such cases utilize the sentence which is "presumed" to be appropriate under the Guidelines. Section II.D and Comments II.D.01., II.D.02., and II.D.201., Sentencing Guidelines.

■■■ Substantial circumstances for departure are those which make the case "different from a typical case." Section I, Sentencing Guidelines; *State v. Peterson*, 329 N.W.2d 58 (Minn.1983). Departure is permitted only when unusual circumstances of the case make departure "more appropriate, reasonable, and equitable than the presumptive sentence." Section II.D, and Comment II.D.01. The Minnesota Supreme Court said in *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984):

> The general issue that faces a sentencing court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question.

Departures are expected in "a small number of cases," Comment II.D.01, Sentencing Guidelines. Comment II.D.03. provides:

> The purposes of the Sentencing Guidelines cannot be achieved unless the presumptive sentences are applied with a high degree of regularity. Sentencing disparity cannot be reduced if judges depart from the Guidelines frequently. Certainty in sentencing cannot be attained if departure rates are high.

The aggravated robbery charge against defendant involved elements of taking property, threatening the use of force to overcome resistence to the taking, and the use of a dangerous weapon. Minn.Stat. § 609.245 (1982). The statutory elements include, alternatively, the use of force or the threat of imminent use of force.

The trial court stated as a reason for departure the gratuitous cruelty of defendant toward the victims. Another statement of the trial court referred to cruelty "by the extreme psychological terror and fear" that the victims experienced. These observations were explained by mention of the tying of the victims, the placement of the victims face down on the floor, and the use of a gun.

■ "Particular cruelty" is declared in the Guidelines as one among a non-exclusive list of aggravating factors for departure purposes. Section II.D(2)(b)(2), Minn. Sentencing Guidelines. This includes gratuitous harm. *State v. Hamilton*, 348 N.W.2d 112 (Minn.Ct.App.1984).

■ The cruelty recited by the trial court was part of the charge that led to the conviction of defendant. It involved the elements of use of force and use of a weapon. It was not "gratuitous cruelty," additional and unnecessary insult beyond the conduct making up the offense. It differed considerably from cruelty to a victim in *Hamilton*, where the victim was put in a painful and dangerous situation after commission of the offense. It differed from robbery cases where victims were injured after being bound. *State v.*

*Schantzen*, 308 N.W.2d 484 (Minn.1981), and *State v. Fairbanks*, 308 N.W.2d 805 (Minn.1981).

■ The evidence on conduct toward the victims does not support the finding that they suffered extreme terror. The recitation of cruelty was also exaggerated by improper regard for the claim that defendant "put a gun to the head of the victim." This fact was denied in the only testimony received by the court on the subject. Nowhere did the record show that this occurred after the victim was placed on the floor, as suggested in the departure report. In *State v. Womack*, 319 N.W.2d 17, 19 (Minn.1982), the Minnesota Supreme Court said:

> It is one thing for the sentencing court to look at the conduct underlying the offense to which the defendant pled guilty if the defendant admits that the underlying conduct occurred, but it is quite another thing when the defendant denies that such conduct occurred.

■ The departure report next refers to the particular vulnerability of a four-year old victim. Vulnerability due to age is also an aggravating factor under Minn. Sentencing Guidelines. Section II. D(2)(b)(1). However, the factor has to do with vulnerability that is exploited in order to commit a criminal act. *State v. Gardner*, 328 N.W.2d 157 (Minn.1983). In the *Gardner* case the Minnesota Supreme Court decided that reduced physical capacity, a vulnerable state, had insignificant bearing on the defendant's sexual offense. The court explained:

> There was evidence that the victim is an epileptic and that at one point during the assault she feared that she might be getting an epileptic seizure. However, there is no basis for concluding that this was a substantial factor in defendant's accomplishing sexual penetration.

*Id.* at 162.

■ Similarly, the vulnerability of a child here had little to do with commission of the crime. The trial court heard no evidence to show the child was injured.

■ The departure report next recites as a factor the occurrence of the robbery in the "zone of security and privacy" of the victims, their home. Injury to a person in his or her "zone of privacy," the victim's home, may be a factor justifying departure. *State v. Morales*, 324 N.W.2d 374 (Minn. 1982). This factor is more weighty for departure than others stated in the trial court report. However, the facts were in marked contrast with those in cases where the factor has been found compelling.

■ The immense invasion of privacy in a rape offense is enlarged when it occurs in the victim's backyard. *State v. Morales, Id.* Brutal abuse is likewise magnified when it occurs at the victim's home. *State v. Van Gorden*, 326 N.W.2d 633 (Minn.1982). Terrorizing a vulnerable victim with threats of death and maiming is compounded when begun in the victim's bedroom. *State v. Hines*, 343 N.W.2d 869 (Minn.App.1984).

■ Here the defendant did no bodily harm to any victim. As already observed, the record does not support a trial court's statement about extreme psychological terrorizing. Defendant took property from a home in which he had been living. While the zone of privacy of the victims justified attention, the evidence does not support a finding that it constituted a compelling circumstance for departure.

Finally, the departure report repeats the facts as to the tying of the victims. This conduct was an integral part of the use of force, an ingredient of the offense that led to defendant's conviction.

## DECISION

■ The offense of defendant did not involve substantial and compelling circumstances justifying the trial court to depart from the presumptive sentence under Minn. Sentencing Guidelines. Defendant's sentence must be reduced to 70 months, which is the maximum sentence permitted for this offense by a person with defendant's criminal history score without departure.

Affirmed as modified.