STATE of Minnesota, Respondent,

v.

Douglas Miles WINCHELL, Appellant.

No. C9–84–345.

Supreme Court of Minnesota.

March 1, 1985.

C. Paul Jones, Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Duluth, Donovan W. Frank, Asst. St. Louis County Atty., Virginia, for respondent.

AMDAHL, Chief Justice.

This is an appeal by the state from a decision of the Court of Appeals, *State v. Winchell,* 352 N.W.2d 447 (Minn.App.1984), reversing an upward durational sentencing departure in an aggravated robbery case. We reverse the Court of Appeals and reinstate the sentence that the trial court originally imposed.

On October 3, 1980, defendant obtained permission from Susan Olson, a woman with whom he had lived in Lakeland, which is in St. Louis County, to use her automobile to run a brief errand. Then, without further permission, defendant drove the vehicle to Minneapolis. Olson immediately reported the car as stolen, and defendant was arrested in Minneapolis on October 6. Defendant escaped from jail in Chisholm on October 12. Olson, who learned of the escape, told a police officer that she felt that defendant would try to contact her, either to try to persuade her to drop the charge or to get revenge for making the charge. She said, however, that she felt safe at home because she had another man living with her. On the evening of October 14, Olson reported that she had just received a collect long-distance telephone call from defendant, that she had accepted it, but that defendant had hung up.

Early the following morning, Olson was asleep in the living room when defendant and a masked man, both armed with guns, forced open the door and entered her house. According to Olson, defendant put his gun up to her head and ordered her to lie face down on the living room floor. The masked man got her boyfriend out of the bedroom and ordered both him and her 4-year-old daughter to lie down on the floor also. Defendant and his accomplice then tied these three with wet strips of towels. According to Olson, the masked man asked defendant at one point if they should rape Olson, but defendant said that there would not be enough time. Defendant and his accomplice then removed more than $500 from Olson's purse and took those funds and stereo equipment valued at more than $1,000. They left after ripping the telephone cord out of the wall.

Following the offense, defendant left the jurisdiction. On October 23, 1980, charges of burglary, aggravated robbery, and assault with a dangerous weapon were filed against defendant and his accomplice, Charles William Santemaro, in connection with the October 15 offense. Defendant was arrested on the charges in September of 1983.

Pursuant to a plea agreement, defendant pleaded guilty to the charge of aggravated robbery in exchange for dismissal of the charges of burglary and assault with a dangerous weapon and the automobile theft charge. Defendant also pleaded

guilty to the escape charge as well as an escape charge in another county. The state agreed to recommend that any sentences imposed would run concurrently, but it reserved the option of seeking a doubling of the 65-month presumptive sentence duration for the aggravated robbery.

In entering his plea, defendant claimed that he only pointed the gun in the general direction of Olson and did not hold it next to her head; he also denied that there was any discussion of raping Olson.

The presentence investigation report contained a copy of the complaint, which in turn contained the official version of the offense as we have summarized it and stated that defendant claimed that "A lot of what [Olson] said was a lie." At the sentencing hearing defense counsel stated:

> Your Honor, I have gone over the presentence investigation myself. I have had [defendant] go over it. And I indicated to him we would have a right to a sentencing hearing if we intended to dispute anything of a factual nature on that pre-sentence investigation. He is aware of that. We will not be requesting a sentencing hearing on anything of a factual nature in the pre-sentence investigation. We will put nothing of a factual nature in issue. But we will be requesting an opportunity to present some testimony as part of a sentencing hearing today, court here today.

In his testimony, defendant again attempted to minimize the seriousness of his conduct, as he did when he entered his guilty plea, apparently in the hope of persuading the trial court not to depart from the presumptive sentence.

The trial court, in doubling the presumptive sentence duration, stated:

1. The defendant gratuitously inflicted particular cruelty on the victims during the course of the Aggravated Robbery. Specifically, all three victims were tied up and were told to lay face down while the defendant put a gun to the head of the victim, Susan Gayle Olson;

2. One of the victims in the offense of Aggravated Robbery was a four year old girl, who was particularly vulnerable due to her age, and witnessed the entire crime in addition to being tied up;

3. The Aggravated Robbery was committed in the privacy and security of the victim's own home, and it, therefore, invaded the victim's zone of security and privacy that surrounded that home. The victims were subjected to particular cruelty by the extreme psychological terror and fear that they experienced, which is not usually associated with the crime of Aggravated Robbery;

4. The victims were left tied up, laying in their home at the conclusion of the Aggravated Robbery.

■ Under *State v. Goulette*, 258 N.W.2d 758 (Minn.1977), a trial court may accept a plea of guilty by a defendant even though the defendant denies his guilt if the trial court concludes that the state has evidence which would support a jury verdict of guilty of a crime at least as serious as that to which the defendant is pleading guilty and if the defendant's plea is voluntarily, knowingly, and understandingly entered. But a defendant, by minimizing his guilt in his testimony at the time he pleads guilty, may not thereby bind the court to his version of the facts. Minn.R.Crim.P. 27.03 provides for presentence investigations and sentencing hearings. The presentence investigation report should contain a summary of the relevant facts. If the defendant disputes those facts, he is free to demand a sentencing hearing to resolve the factual dispute. The fact that a defendant attempts to plead not very guilty in pleading guilty ordinarily does not limit the trial court in its findings of fact at the subsequent sentencing hearing.

■ In this case defense counsel informed the court that defendant did not want to challenge and was not challenging anything in the presentence investigation report. The trial court clearly was not required to accept defendant's version of the crime, which downplayed its seriousness.

In this respect, the defendant's reliance on *State v. Womack*, 319 N.W.2d 17 (Minn.

1982), is misplaced. The defendant in *Womack* was charged with being a felon in possession of a pistol and assault with a dangerous weapon. He pleaded guilty to the possession charge on the understanding that the assault charge would be dismissed, but the trial court based the durational departure on its belief that the defendant had committed the assault. We held that this was improper. *Womack* does not compel the conclusion that the trial court erred in considering defendant's act of holding the gun to the victim's head as a factor justifying departure. In *Womack* the defendant, insisting that he acted in self-defense and therefore did not commit an assault, agreed to plead guilty to the possession charge in exchange for dismissal of the assault charge. It was unfair under the circumstances for the trial court to base the durational departure on its belief that defendant committed the dismissed assault charge. Both the aggravated robbery charge and the assault charge against the defendant in the present case were based on evidence that defendant used a gun during the robbery. The assault charge was simply a lesser charge that was superfluous once defendant agreed to plead guilty to the more serious aggravated robbery charge. The agreement to dismiss it was not an implied concession by the prosecutor that defendant did not commit an assault nor a concession that the conduct underlying the assault charge could not be considered in determining the sentence for the robbery charge.

The trial court relied on a number of facts relating to the conduct underlying the offense to which defendant pleaded guilty. These include:

(a) The robbery occurred in the victim's house. In numerous cases we have held that an invasion of the victim's zone of privacy—the house and curtilage—is an aggravating factor that can be considered in deciding whether to depart. *See State v. Back*, 341 N.W.2d 273 (Minn.1983) (trial court departed durationally from presumptive sentence for a felony murder in sentencing man who went on shooting spree that resulted in death of woman who was on her porch when struck; since invasion of victim's residential privacy was not element of offense of felony murder, it was proper for court to rely on it in departing); *State v. Jones*, 328 N.W.2d 736 (Minn.1983) (robbery occurring in victim's house); *State v. Norton*, 328 N.W.2d 142 (Minn. 1982) (kidnapping of child from child's yard); *State v. Van Gorden*, 326 N.W.2d 633 (Minn.1982) (sexual assault case involving invasion of zone of privacy surrounding and including victim's house); and *State v. Morales*, 324 N.W.2d 374 (Minn.1982) (sexual assault of woman sunning in her backyard). Our recent decision in *State v. Gist*, 358 N.W.2d 664 (Minn.1984), is consistent with the other cases. *Gist* involved an attempted aggravated robbery that commenced in a public alley near the victim's house. The victim ran to the door of the house and the defendant then fled. We concluded that under the circumstances the defendant's conduct was not significantly more serious than that typically involved in the offense of attempted robbery. In this case the defendant and his accomplice forced their way into the victim's house.

(b) The invasion of the house occurred at 2 a.m. In *State v. Deschampe*, 332 N.W.2d 18 (Minn.1983), the fact that the victim was awakened and kidnapped in the middle of the night was one of a number of facts that compelled the conclusion that the defendant committed the offense, rape, in a particularly serious way. The legislature recognized that entry into a residence in the middle of the night is a greater invasion of residential privacy than entry during the daytime in Minn.Stat. § 626.14 (1984), which provides that search warrants shall be served only in the daytime unless the issuing magistrate authorizes a nighttime search on the basis of a showing in the affidavit that a nighttime search is necessary.

(c) Defendant put three people in fear. In *State v. McClay*, 310 N.W.2d 683 (Minn. 1981), we upheld a departure in a robbery case because more people were put in fear than in the normal case.

(d) One of the people put in fear was a 4-year-old child and defendant apparently knew the child would be present before he

entered the house. In *State v. Profit*, 323 N.W.2d 34, 36 (Minn.1982), we stated that committing a robbery in front of children was a "particularly outrageous act," especially since the defendant knew in advance that children would be present.

(e) The defendant held his gun next to Olson's head at one point. Holding a gun next to the victim's head during a robbery may not be enough by itself to justify an upward durational departure, *State v. Magnan*, 328 N.W.2d 147 (Minn.1983), but it is a factor that can be considered in determining whether defendant committed the offense in a particularly serious way.

(f) At one point during the incident, defendant and his accomplice discussed whether one or both of them should rape Olson. It is apparently true that the accomplice raised the subject and defendant said there was not time to do it. But, as we made clear in *State v. Jones*, 328 N.W.2d 736 (Minn.1983), under Minn.Stat. § 609.05 (1984), a defendant, as a participant in a robbery, is legally responsible for the acts and statements of his accomplice in committing the crime.

(g) Defendant and his accomplice bound the victims during the robbery and left them bound. Binding victims is not a normal occurrence in an aggravated robbery, at least if the robberies that we have reviewed over the years are any indication. In any event, it clearly is a factor that can be considered along with all the other facts in determining if the defendant committed the offense in a particularly serious way.

Considering all the relevant facts, we conclude that the trial court did not abuse its discretion in sentencing defendant to a sentence double the presumptive sentence duration. A comparison of the facts in this case with those in *State v. Fairbanks*, 308 N.W.2d 805 (Minn.1981), where we upheld an upward durational departure, is useful. There the defendant and two companions forced their way into a residence at 3:30 a.m., threatened to kill and castrate the victim, tied the victim, inflicted bodily harm upon him, and left after taking a television and some stereo equipment. The defendant pleaded guilty to aggravated robbery in exchange for the dismissal of a burglary charge based on the same incident. We upheld the durational departure on the ground that the defendant committed the offense in a particularly cruel or serious way. Here, as in *Fairbanks*, a residence was invaded. In both cases the invasion occurred in the middle of the night. In *Fairbanks* there was a single victim; here there were two other people present, one of whom was a 4-year-old child. In *Fairbanks* the defendants made threats and inflicted injury; in this case the defendant and his accomplice were armed with guns, defendant pointed one of them at the victim's head, and there was brief discussion of whether they should rape the victim. In *Fairbanks* the victim was bound; in this case the victim, her boyfriend and her daughter were bound. In this case defendant and his accomplice ripped the telephone cord from the wall when they left.

In conclusion, we hold that the trial court did not abuse its discretion in departing from the presumptive sentence and we therefore reverse the decision of the Court of Appeals and reinstate the original sentence.

Reversed.