STATE of Minnesota, Respondent,

v.

Robert Anthony
SCHROEDER, Appellant.

No. C9–86–1676.

Court of Appeals of Minnesota.

March 10, 1987.
Review Denied April 23, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This is a sentencing appeal. Pursuant to a plea agreement, defendant, age 19, pled

guilty in district court to attempted second degree murder, Minn.Stat. §§ 609.19, 609.-17 (1986). The presumptive sentence for this severity level X offense when committed by a defendant with a criminal history score of zero is 60 months. The trial court granted the State's motion for a 50% upward departure and imposed a 90–month sentence. Defendant claims the trial court abused its discretion in aggravating his sentence because (1) his offense was not more serious than the typical offense and (2) the court failed to consider mitigating circumstances. We affirm.

## FACTS

Robert Anthony Schroeder was convicted of attempting to murder 21–year-old Denise DeLaRosa. At approximately 3:30 p.m. on March 13, 1986, defendant, whom the victim had known for six years, came to her apartment to visit. After approximately three hours, defendant left but later returned to the apartment.

According to police reports, defendant asked to come into the apartment because he had nowhere else to go for a couple of hours. The victim readmitted him, explaining she was getting ready to spend the evening with her parents and he could stay until her mother arrived to pick her up.

While in the bathroom, the victim heard defendant call her into the bedroom. She responded to the call and found defendant motioning her to look in the closet. Defendant then threw a rope around her neck and began strangling her. The victim fell to the floor and her next memory was of defendant being on top of her.

During the struggle the rope came off her neck and defendant attempted to stuff a bandana in her mouth. To further subdue her, he handcuffed her. He then pulled a knife from his pocket and held it against her throat saying, "you knew I've always hated you, I'm going to kill you." When the victim challenged him to do so, he plunged the knife into the couch. De-

fendant then lifted the victim's bathrobe to her waist and began touching her around the legs and thighs, and penetrated her vagina with his finger. After the victim lost control of her bowels and defecated, defendant got off her and ran from the apartment.

Shortly thereafter, the victim's neighbors arrived and summoned the police. The victim, still handcuffed, was taken to the hospital for emergency treatment. The medical report prepared at the time indicated she suffered severe swelling about her neck, broken blood vessels in her face and hemorrhaging to both sclera, the white tissue covering the eyeball. The treating physician indicated if defendant had not removed the rope from the victim's throat when he did, she would have died within 30 seconds.

Defendant was arrested the next day. During his initial interview with police, he admitted he originally intended to kill the victim because she had praised his father who had physically and emotionally abused him as a child, but later decided to rape and humiliate her instead. He also admitted pinning the victim down to the floor and threatening her with a knife in addition to strangling her. He denied any sexual penetration.

As a result of the incident, defendant was initially charged with one count of attempted second degree murder. Later, an alternative count of attempted first degree murder was filed. Following an examination establishing defendant's competency to proceed, defendant entered a *Goulette* plea [1] of guilty to attempted second degree murder in exchange for dismissal of the attempted first degree murder charge. During the guilty plea hearing, defendant admitted he choked the victim with a rope and tried to sexually assault her, but maintained no sexual penetration occurred. Defendant denied, however, his initial admissions to police that he threat-

---

**1.** Under a *Goulette* plea, a defendant may plead guilty to the lesser charge although denying guilt when he voluntarily, knowingly and under-

standingly decides a jury could, on the evidence, find him guilty of the crime charged. *State v. Goulette,* 258 N.W.2d 758, 761 (Minn.1977).

ened the victim with a knife and originally intended to kill her.

At the sentencing hearing, the trial court found merit in the State's 50% upward departure motion, emphasizing defendant's particularly cruel treatment of the victim. In addition, the court referenced the pre-sentencing report detailing the victim's psychological problems resulting from the incident. Based on these aggravating factors, the trial court imposed a 90-month sentence.

## ISSUE

Did the trial court abuse its discretion by upwardly departing in sentencing defendant?

## ANALYSIS

1. When substantial and compelling factors are present, a sentencing judge may "impose a sentence that is deemed to be more appropriate, reasonable, or equitable than the presumptive sentence." Minnesota Sentencing Guidelines II.D.01 comment; *see State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981).

The general issue that faces a sentencing court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question. *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984). The trial court is accorded broad discretion and we will not interfere absent a "strong feeling that the sanction imposed exceeds or is less than that 'proportional to the severity of the offense of conviction and the extent of the offender's criminal history.'" *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981) (quoting Minnesota Sentencing Guidelines, Statement of Purpose and Principles).

The trial court indicated defendant treated the victim with particular cruelty. *See* Minnesota Sentencing Guidelines II.D. 2.b(2). Since attempted murder is by nature a cruel act, however, "[s]omething more than the elements of the offense must exist to justify a departure." *State*

*v. Blegen*, 387 N.W.2d 459, 464 (Minn.Ct. App.1986), *pet. for rev. denied*, (Minn. July 31, 1986).

The record shows defendant did more than attempt to murder the victim. In addition to inflicting unusual pain and injury by choking her, he perpetrated a series of gratuitous and demeaning acts with an intent to rape and humiliate her: he gagged and handcuffed the victim, threatened her with a knife, touched her in a sexual manner, and inserted his finger into her vagina. *See, e.g., State v. Johnson*, 327 N.W.2d 580 (Minn.1982) (wielding knife and threatening to kill victim to force sexual penetration particularly cruel).

Defendant claims his acts which could have killed the victim, but instead inflicted injuries normally associated with strangulation, were intrinsic to the charged crime and do not constitute aggravating factors. *State v. Brusven*, 327 N.W.2d 591, 593 (Minn.1982). Defendant specifically argues his denial of the additional aggravating factors of sexual penetration and threats to kill the victim with a knife makes departure on those grounds impermissible.

In *State v. Winchell*, 363 N.W.2d 747 (Minn.1985), the defendant, convicted of aggravated robbery, similarly denied allegations he threatened the victim with a gun and discussed with his accomplice the possibility of raping her. The court upheld the trial court's reliance on the official version of facts rather than defendant's admissions. The supreme court explained:

Under *State v. Goulette*, 258 N.W.2d 758 (Minn.1977), a trial court may accept a plea of guilty by a defendant even though the defendant denies his guilt if the trial court concludes that the state has evidence which would support a jury verdict of guilty of a crime at least as serious as that to which the defendant is pleading guilty and if the defendant's plea is voluntarily, knowingly, and understandingly entered. But a defendant, by minimizing his guilt in his testimony at the time he pleads guilty, *may not thereby bind the court to his version of the*

*facts.* Minn.R.Crim.P. 27.03 provides for presentence investigations and sentencing hearings. The presentence investigation report should contain a summary of the relevant facts. *If the defendant disputes those facts, he is free to demand a sentencing hearing to resolve the factual dispute.* The fact that a defendant attempts to plead not very guilty in pleading guilty ordinarily does not limit the trial court in its findings of fact at the subsequent sentencing hearing.

*Id.* at 749 (emphasis added).

Defendant asserts the facts in this case are distinguishable from those in *Winchell* because the record fails to reflect defendant was ever advised of his right to request an evidentiary hearing challenging disputed facts in the presentence report. Defendant claims the trial court was remiss in not requiring sworn testimony by the victim and police to support the State's claims.

█ Defendant's attempts to distinguish his case from *Winchell* are without merit. In accepting a *Goulette* plea, the trial court is not required to rely only on sworn testimony. The court is required to determine whether the guilty plea is supported by a factual basis which may be founded on witnesses' statements and other items in the file. In some cases, "the prosecutor might even consider calling some of the state's witnesses." *Goulette*, 258 N.W.2d at 761. In this case, sworn testimony was unnecessary because the record reflects a sufficient factual basis to support defendant's guilty plea to attempted second degree murder. In addition to statements by the victim and police, defendant admitted choking the victim with a rope.

█ Similarly, neither the *Goulette* nor *Winchell* court required that defendant be advised, on the record, of his right to request an evidentiary hearing regarding facts disputed in the presentencing report. The record in this case contains defendant's repeated statements regarding the adequacy of counsel and his intent to voluntarily, knowingly and understandingly enter a guilty plea. Further, the victim was present at the sentencing hearing and thus available to testify should defendant or his counsel have requested a hearing. Since no such hearing was requested, defendant may not wait until appeal to contest the veracity of facts in the presentence report. *State v. Booker*, 348 N.W.2d 753, 756 (Minn.1984).

█ The trial court also relied on the presentencing report emphasizing the victim's psychological problems resulting from the incident. These problems include nightmares, inability to sleep without lights on, fear of physical contact with men, and a "hardened" attitude towards others. In addition, due to embarrassment, she changed jobs and her residence. Severe psychological impact on the victim is an added justification for departure. *See Stephens v. State*, 369 N.W.2d 603, 605 (Minn. Ct.App.1985).

█ Our review of the record reveals additional justification based on the particular vulnerability of the victim. *See* Minnesota Sentencing Guidelines II.D.2.b(1). The victim was particularly vulnerable because she trusted defendant, having known him for six years. Defendant's violation of that trust is an aggravating factor recognized previously. *See Stephens*, 369 N.W.2d at 605; *State v. Campbell*, 367 N.W.2d 454, 461 (Minn.1985).

Further, defendant abused the victim's trust to gain entry to the victim's residence, a zone of privacy in which she had every right to feel secure.

> Invasion of the victim's zone of privacy justifies a departure because it puts the victim in constant fear for her safety whenever she is at home or in the surrounding area.

*State . v. Titworth*, 381 N.W.2d 510, 512 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Apr. 18, 1986); *see Winchell*, 363 N.W.2d at 750.

█ Defendant claims the court should have offset any potential upward departure by considering the restraint he exercised during the crime, his youth and lack of prior record. In view of the aggravating

factors present, the record supports the trial court's discretionary, limited durational departure.

## DECISION

The trial court did not abuse its discretion. The record supports the 50% upward departure based on defendant's particularly cruel treatment of the victim, her resultant psychological damage and particular vulnerability due to defendant's violation of her trust and invasion of privacy in her home.

Affirmed.