STATE of Minnesota, Respondent,

v.

Wayne John FELIX, Appellant.

No. C3–87–985.

Court of Appeals of Minnesota.

Aug. 18, 1987.

Review Denied Sept. 29, 1987.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

Susan J. Andrews, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellant Wayne John Felix was charged with first-degree assault and, pursuant to a plea agreement, he pled guilty. He was sentenced to 86 months in prison, double the presumptive sentence. On appeal he challenges the departure from the sentencing guidelines and claims he received inef-fective assistance of counsel. We affirm the sentence.

## FACTS

At about 4:00 a.m. on October 25, 1986, police officers were flagged down at the corner of University and Grotto Avenues in St. Paul. Upon investigation, the officers found Tamara Marie Kirk lying injured in a dumpster area, with extensive trauma to her head and face. She was partially clothed, with her pants down around her ankles and her shirt up around her head. There was a large amount of blood near her head and waist, and she had lost control of her bowels.

As they began to apply first aid, the officers heard witnesses say, "there goes the guy," and saw Felix running away. The officers apprehended and arrested him, noting that he had blood and human feces spattered all over his clothes and his body. Upon questioning, Felix told the officers that he and Kirk had known each other for some time and used to "go together," but had recently broken up. Earlier that evening, Kirk had told him that she wanted nothing to do with him and said he was a "creep." Felix explained his presence at the scene by claiming he had heard screams and had seen someone run from the area, but had been unable to catch him. The officers found $120 on Felix, although witnesses stated that he had no money earlier that evening. Kirk, however, had recently been paid and was carrying over $100 when the assault occurred.

One witness at the scene stated that he saw Felix beating Kirk with a "stick." Officers found several pieces of wood covered with blood at the scene. In addition, another witness later picked Felix's photograph out of a group, identifying him as Kirk's assailant.

When Kirk arrived at the hospital, her eyes were swollen shut and there was visible swelling all around her head. She had a large, deep cut running from her hairline down to the inside corner of her eye. Her nose was bruised and bleeding. Her upper lip was completely pulled apart, exposing

her teeth and upper jaw. She also had a stab wound on her neck. She was bleeding heavily from all of the wounds, and doctors indicated that she had a possible skull fracture. In the emergency room Kirk stated that Felix had raped and beaten her. She also yelled several times, "Let me up, Wayne. If you love me, you'll let me up. Help me."

Kirk was treated for multiple facial lacerations and contusions. She was hospitalized for nine days and missed two months of work. She has a number of disfiguring facial scars, including one scar running from her forehead to her lip, and permanent partial loss of eyesight in one eye. Her medical bills at the time of the presentence report were already $11,000, and she faced much continuing plastic surgery.

In a letter to the trial court judge, Kirk stated that she has experienced headaches, severe pain in her hip and problems with her left arm requiring her to wear a sling. She also has had to go to the hospital emergency room on at least two occasions for sudden, unexplained pain. Kirk also wrote of the emotional trauma she has suffered as a result of the attack: she has nightmares and is extremely uncomfortable whenever someone touches her neck because it reminds her of being strangled. She concluded that she could never forgive Felix for the assault, never wanted to see or hear from him again, and hoped that no one else would ever have to experience such a horrible attack.

Felix was charged with first-degree assault under Minn.Stat. § 609.221 (1986). Pursuant to a plea agreement, he pled guilty as charged on the condition that the State agree not to amend the complaint to charge attempted murder. As part of the agreement, the State announced its intent to seek a double upward departure from the presumptive guidelines sentence of 43 months.

At the guilty plea hearing, Felix admitted assaulting Kirk and taking her money. The following exchange also took place:

Q: You understand that if we went to trial in this case that you would have a right to [plead] a defense of intoxication? That you could be, because of the state of mind, based on the amount of alcohol and drugs you had taken, that you could not form the intent to commit this act? Do you understand that you would have the right to assert that defense?

A: Yes.

Q: Do you have any further questions of me?

A: No.

Q: You feel we had a sufficient time to discuss this case?

A: Yes.

Felix further stated that he understood that by pleading guilty, he was giving up his right to bring witnesses in to testify on his behalf.

At Felix's sentencing hearing, his attorney asked for a downward dispositional departure, citing Felix's lack of criminal history, his remorse and his need for drug treatment as evidence of amenability to probation. He also asked the trial court to reject the recommendations for double upward departure of both the State and County Departments of Community Corrections.

The trial court, rejecting Felix's request and following the Corrections Departments' recommendations, imposed an 86-month prison term. The court reasoned:

This is a departure from the sentencing guidelines and the reasons for the departure are basically that the assault was particularly vicious and torturous in that the victim lost consciousness early and repeatedly was beaten by the defendant. The victim was extremely vulnerable to the attack.

Felix appeals, claiming the sentencing court abused its discretion by doubling his presumptive sentence. He also filed several pro se briefs alleging, among other things, ineffective assistance of counsel.

## ISSUES

 1. Did the trial court abuse its discretion in sentencing Felix to double the presumptive sentence?

2. Was Felix denied effective assistance of counsel?

## DISCUSSION

### I

When substantial and compelling factors are present, a sentencing judge may "impose a sentence that is deemed to be more appropriate, reasonable, or equitable than the presumptive sentence." * * * The trial court is accorded broad discretion and we will not interfere absent a "strong feeling that the sanction imposed exceeds or is less than that 'proportional to the severity of the offense of conviction and the extent of the offender's criminal history.'"

*State v. Schroeder,* 401 N.W.2d 671, 674 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 23, 1987). Generally, when aggravating circumstances are present, the upward limit on a durational departure is double the maximum presumptive sentence duration. *State v. Evans,* 311 N.W.2d 481 (Minn.1981).

Felix argues that the upward departure was unjustified. He first contends the sentencing court could not properly rely on the possibility of Kirk's death or the permanence of her injuries in determining his sentence because those factors are, by definition, found in any first-degree assault. First-degree assault is an assault wherein "great bodily harm" is inflicted. Minn. Stat. § 609.221 (1986). "Great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn.Stat. § 609.02, subd. 8 (1986).

■ Even though the infliction of great bodily harm is an element of first-degree assault, "the injury nonetheless can be considered as an aggravating factor in this case because of its serious and permanent nature." *State v. Van Gorden,* 326 N.W.2d 633, 634 (Minn.1982). Moreover, the crime here was significantly more serious than that typically involved in the commission of a first-degree assault. *See State v. Cox,* 343 N.W.2d 641, 643 (Minn. 1984). This case did not simply involve one of the factors defining "great bodily harm;" it involved *all* of them. Kirk was subject to a high probability of death *and* serious permanent disfigurement *and* a permanent impairment of a bodily function *and* other serious bodily harm.

■ Felix also argues that the sentencing court erroneously relied on the uncharged offenses of robbery and rape in setting his sentence. The court did note these uncharged offenses; however, the court specifically stated that the departure was based on "the vicious nature of the attack and the vulnerability of the victim." These are both valid reasons for an increased sentence. Minnesota Sentencing Guidelines II.D.2.b.(2) and (3); *see, e.g., State v. Franson,* 403 N.W.2d 920 (Minn. Ct.App.1987) (particular cruelty justified upward departure), *pet. for rev. denied* (Minn. June 25, 1987); *Schroeder,* 401 N.W.2d at 675 (particular vulnerability found when victim knew and trusted assailant for a long time).

### II

■ In his first pro se brief, Felix asserts that he was denied effective assistance of counsel. He contends his attorney failed to contact several witnesses who could have attested to Felix's state of intoxication on the night of the assault. Because first-degree assault requires intent, he argues that intoxication would have been a valid defense. *See* Minn.Stat. § 609.075 (1986). However, Felix chose to waive his right to a trial after he was expressly told that by doing so he was waiving his right to claim intoxication as a defense and his right to call witnesses. Therefore, his claim is groundless. *See Pearson v. State,* 308 Minn. 287, 288, 241 N.W.2d 490, 491 (1976).

Felix filed numerous "supplemental" pro se briefs containing various additional issues. These issues were not raised in the respondent's brief and therefore need not be addressed. *See* Minn.R.Civ.App.P. 128.-

02, subd. 3 (the reply brief must be confined to new matters raised in the brief of the respondent). Moreover, leave to file these "supplemental" briefs was neither requested nor granted. *See* Minn.R.Civ. App.P. 128.02, subd. 4 (no further briefs may be filed except with leave of the appellate court). Nonetheless, we have reviewed the purported issues raised in them and find the arguments meritless.

## DECISION

The trial court did not abuse its discretion in sentencing the defendant to double the presumptive sentence.

Affirmed.