STATE of Minnesota, Respondent,

v.

Donald Byron PEARSON, Appellant.

No. C9–91–1157.

Court of Appeals of Minnesota.

Dec. 31, 1991.

Review Denied Feb. 10, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Lisa A. Berg, Asst. Hennepin County Atty., Minneapolis, for respondent.

John M. Stuart, Minnesota Public Defender, Susan Lynn–Paul Hauge, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., CRIPPEN and DAVIES, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Donald Byron Pearson challenges the trial court's imposition of a durational and dispositional departure. We affirm.

## FACTS

In August of 1988, Pearson was living with his fiancee, Patricia Williams. The complaint indicates that in the early morning hours of August 14, 1988, Pearson took the couple's seven-week-old daughter and went into a bedroom.

Later in the day Ms. Williams noticed bite marks on the child's body and listlessness in the child's movements. Upon admission to Minneapolis Children's Medical Center, the child was diagnosed as having bite marks on her lips, right arm and both feet. The bite marks involved extensive bruising.

The baby was also diagnosed as having a fracture to the left posterior portion of her skull, as well as a brain contusion and hemorrhaging beneath the surface. The treating physician stated that there was abnormal brain activity on both sides of the brain, indicating an injury to the right side of the brain as well as the left. The treating physician also stated that the injuries had to have been inflicted within 48 hours of treatment and required such a substantial blow to the skull that he doubted the injuries could be attributed to an accidental fall. The child was hospitalized for several days to recover from what the treating physician described as life threatening injuries.

Pearson was charged with one count of first degree assault in violation of Minn. Stat. § 609.221 (1988) (assault with infliction of great bodily harm), and one count of third degree assault in violation of Minn. Stat. § 609.223 (1988) (assault with infliction of substantial bodily harm). The complaint described the entirety of the child's injuries. Although the document alleged different degrees of harm, neither count was charged to specific injuries.

As part of a plea agreement, Pearson pleaded guilty to the third degree assault charge and assented to the statutory maximum sentence of 36 months executed, a triple durational departure as well as a dispositional departure from the presumptive sentence of one year and a day stayed.[1] Pearson also accepted "as part of the plea negotiation" the existence of specified reasons for departure: that the child was vulnerable and that Pearson, as the infant's father, was in a position of authority. In addition, Pearson expressly admitted biting the child. In exchange for the guilty plea the state agreed to drop the first degree assault charge.[2]

At sentencing, appellant made no request for a fact hearing to dispute the underlying circumstances as portrayed by the presentence investigation report and the complaint.[3] He submitted motions for imposition of the presumptive sentence or, in the alternative, vacation of the plea agreement. The court denied appellant's motions and sentenced him to 36 months imprisonment. The court stated that it concurred with the grounds for departure stated when the plea agreement was announced.

On appeal, Pearson claims the trial court erred because there were no substantial and compelling circumstances warranting departure from the sentencing guidelines. Pearson also claims that the court could

---

1. The presumptive sentence for first degree assault was 43 months imprisonment. Minn. Sent. Guidelines IV and V (1988).

2. There was no discussion of the child's head injuries at the plea hearing. At the conclusion of the findings hearing, appellant pleaded with the trial court:

> I feel that I've been punished enough, and ask that you have a little heart and compassion and allow me to go home—probation, treatment if necessary.

The court responded:

> Mr. Pearson, I—that raises the other issue in this case, the severity of the injuries to the child and the reasons for that. That disturbed me a great deal. And I am not at all uncomfortable with the sentence that was negotiated and which I've agreed to impose upon you. I think that your position of authority and the vulnerability of that child were such that this sentence is appropriate for the offense you've pled to.

3. Appellant's claim that he has consistently denied causing the infant's head injuries is not substantiated by the record. Our thorough review of the record indicates that Pearson never asserted to the trial court that he did not cause the child's head injuries. The only record of Pearson's denial is found in a report of the presentence investigator indicating appellant's general denial: "In essence, defendant is denying guilt in this offense." The investigator added: "While he did admit playfully and lovingly nibbling on his daughter, he denies biting her hard and said he is not to blame for her head injuries." To describe the offense, the presentence investigator attached and referred to the criminal complaint, which fully described the severity of the child's injuries. Notwithstanding this portrayal of the offense, appellant made no request for a fact hearing.

not consider the child's head injuries in making its sentencing decision.

### ISSUES

1. Do the underlying facts and circumstances warrant a greater than durational departure as well as a dispositional departure?

2. Are appellant's admissions and statements contained in the negotiated plea agreement a consideration in determining the appropriate sentence?

3. Is it improper to consider evidence at sentencing because the evidence tends to prove appellant was guilty of an offense dismissed under the plea agreement?

### ANALYSIS

**1.**

Departure from the presumptive sentence is justified where the defendant's conduct is significantly more severe than conduct typically involved in the commission of the crime. *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984) (concerning durational departures); *State v. Loitz*, 366 N.W.2d 744, 746 (Minn.App.1985) (concerning dispositional departures), *pet. for rev. denied* (July 17, 1985).[4] Durational departures are usually limited to double the presumptive sentence. *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981). Departures may exceed double the presumptive sentence, however, in those "rare cases in which the facts are so unusually compelling that an even greater degree of departure will be justified." *Id.; see State v. Stumm*, 312 N.W.2d 248, 249 (Minn.1981) (general limit adopted in *Evans* does not apply when aggravating circumstances are compelling).

The trial court's departure will not be disturbed on appeal absent a clear abuse of discretion. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981); *see State v. Anderson*, 356 N.W.2d at 454 (if record supports findings that substantial and compelling circumstances exist, appellate court will not modify departure unless it has strong feeling sentence is disproportionate). If the reasons for departure are stated on the record, a reviewing court will examine the record to determine if the reasons given by the trial court justify the departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985). If the reasons given justify departure or if the reasons are inadequate but there is sufficient evidence in the record supporting departure, then the departure is to be upheld. *Id.*

The trial court's durational and dispositional departure was based on legitimate aggravating factors. *See State v. Carpenter*, 459 N.W.2d 121 (Minn.1990) (abuse of position of authority); *State v. Udstuen*, 345 N.W.2d 766 (Minn.1984) (victim vulnerability); *State v. Olson*, 436 N.W.2d 817 (Minn.App.1989) (abuse of position of authority and victim's vulnerability), *pet. for rev. denied* (Minn. Apr. 26, 1989), *cert. denied*, 493 U.S. 862, 110 S.Ct. 176, 107 L.Ed.2d 132 (1989); *State v. Steinhaus*, 405 N.W.2d 270 (Minn.App.1987) (victim's vulnerability). Pearson abused his position of authority in assaulting his seven-week-old daughter. In addition, the child was helpless and suffered serious injuries. Moreover, there was no clear abuse of discretion in the trial court's judgment that these factors were unusually compelling, justifying a greater-than-double durational departure.[5] We are satisfied that the trial court did not commit error when it imposed a 24 month upward departure or a dispositional departure.

**2.**

The terms of a negotiated plea agreement, standing alone, do not consti-

---

4. The same aggravating circumstances which justify a durational departure may also justify a dispositional departure. *State v. Anderson*, 356 N.W.2d 453, 454 (Minn.App.1984).

5. We also note that the record reveals that the child was clearly in need of medical attention during the period Pearson was in sole physical custody of the child, yet Pearson failed to seek medical assistance for the child. We believe this represents an additional factor supporting departure from the guidelines in this case. *See State v. Jones*, 328 N.W.2d 736, 738 (Minn.1983) (failure to seek medical attention for assault victim); *Stumm*, 312 N.W.2d at 249 (indifference towards caring for two-year-old assault victim).

tute a "substantial and compelling circumstance" which may be relied upon by the sentencing court to justify departure. *Garcia*, 302 N.W.2d at 647. The court must make an independent evaluation of the sentencing factors and has the sole authority to determine the appropriate sentence. *Id.; see also State v. Pieri*, 461 N.W.2d 398, 400 (Minn.App.1990) (defendant's acceptance of upward departure in plea agreement does not relieve trial court of responsibility to provide reasons for departure on record). The trial court may consider the whole record at sentencing. *See United States v. York*, 830 F.2d 885, 893 (8th Cir.1987) (sentencing judge has "broad discretion as to the type of information he may consider"), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988). Specifically, the court may consider the defendant's admissions, statements and agreements contained in the negotiated plea. *See United States v. Dailey*, 918 F.2d 747, 748 (8th Cir.1990) (court may "rely upon stipulations between the government and the defendant in determining the facts relevant to sentencing"); *see also State v. McLaughlin & Schulz, Inc.*, 397 N.W.2d 9, 11 (Minn.App.1986) (court found no abuse of discretion in imposing fines which were contemplated by plea agreement and authorized by law).

▆ While the trial court in the instant case could not rely solely on Pearson's acquiescence to upward departure, grounds for departure are magnified by admissions of appellant in his agreement and at the plea hearing. Pearson admitted to biting the infant, causing the bruising and breaking of the child's skin. Pearson also agreed to the grounds for departure: 1) the vulnerability of the victim, and 2) Pearson's position of authority over the infant, given his status as her biological father. Finally, Pearson agreed to the 36 month executed term, recognizing that it was both a durational and dispositional departure. Com-

bined with Pearson's statement that he took responsibility for the injuries caused by his bites, the agreement indicates an acknowledgement of the substantial and compelling circumstances warranting the departure.[6]

Appellant contends that giving credence to the sentencing portion of his plea agreement unduly risks sentencing which contradicts the sentencing guidelines. We find this argument unwarranted.

▆ The purpose of the sentencing guidelines is to eliminate disparate sentencing, protecting the interests of the state and defendants. *Garcia*, 302 N.W.2d at 646. Nothing in the development or implementation of the guidelines suggests an aim to discourage or limit plea bargains as an element in the just disposition of criminal prosecutions.

▆ Moreover, it would be improvident for us to disregard the sentencing aspects of a plea agreement. *Pieri*, 461 N.W.2d at 401 (it does not serve "defense in criminal proceedings to discourage plea agreements by imperiling the state's confidence that they will be upheld without alteration"); *see Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (disposition through plea bargain is essential and desirable part of administration of justice). Once a court accepts a plea containing a sentencing agreement, the terms of the agreement normally should be fulfilled. *See Santobello*, 404 U.S. at 262, 92 S.Ct. at 499 (discussing prosecutor's mandatory duty to uphold sentencing promise contained in plea agreement). If prosecutors and courts are not inhibited from accepting plea agreements, this "may be in the interest of the defendant as well as the public." *State v. Synnes*, 454 N.W.2d 646, 648 (Minn.App.1990) (Forsberg, J., concurring specially), *pet. for rev. denied* (Minn. June 26, 1990).

---

6. The critical distinction between this case and *Garcia* is what the plea agreements established. In neither case did the plea agreement constitute the substantial and compelling circumstances warranting departure. However, in *Garcia* the plea agreement merely delineated an agreement to a specified term. *Garcia*, 302 N.W.2d at 645. In contrast, the plea agreement in the instant case acknowledges the substantial and compelling reasons for departure as well as an agreement to a specified term.

Crystallizing the sentencing issues in the plea agreement is advantageous to both the state and the defendant. If both parties agree that the defendant committed certain acts which constitute substantial and compelling reasons for departures, the sentencing court will benefit from the clear presentation of these issues in the record. If the parties disagree concerning the underlying conduct, the presence of such disagreements in the plea agreement will aid the sentencing court by focusing on these issues at the sentencing hearing and in the departure report.[7]

We conclude that Pearson's acknowledgement of the seriousness of his conduct and the specific grounds for departure is a consideration supporting the trial court's finding of substantial and compelling circumstances warranting departure from the guidelines.

### 3.

A court can properly consider the course of conduct underlying an offense in deciding to depart from the statutory guidelines. *Cox*, 343 N.W.2d at 643.[8] Only when the sentencing court contemplates facts related solely to a dismissed charge does the sentencing court create the risk of reversible error. *State v. Womack*, 319 N.W.2d 17, 19 (Minn.1982).[9]

The aggravating circumstances supporting departure in this case are not unique to a charge of first degree assault. Nothing in the complaint tied these aggravating factors to the first degree assault charge. We conclude, therefore, that be-cause the stated reasons for departure arise from the facts and circumstances underlying the third degree assault charge, the trial court properly sentenced the defendant even if these facts and circumstances point to his guilt on the dismissed charge.

Moreover, even if the departures were based partly on the head injuries in this case, there was no reversible error. A defendant may not bind the court to his version of the facts by virtue of his guilty plea. *Winchell*, 363 N.W.2d at 749. If a defendant disputes the facts contained in the presentence investigation report, he should demand a sentencing hearing to resolve the factual dispute. *Id.*

The presentence investigation report in this case clearly incorporated the complaint charging Pearson with inflicting both the bite and head wounds. However, Pearson did not request a sentencing hearing to dispute the underlying circumstances of the case. Thus, the court was free to consider the evidence contained in the record on Pearson's connection to the child's head injuries even though on appeal Pearson denies responsibility for those injuries.

The consideration of the infant's head injuries does not violate the narrow rule of *Womack* on dismissed charges. The complaint here alleged different degrees of harm and neither count was tied to specific injuries. Moreover, under *Cox*, dismissal of the more serious charge does not mandate the court's automatic disregard for

---

7. In both cases, however, the trial court retains the sole authority and responsibility for making and justifying departures. *Garcia*, 302 N.W.2d at 647.

8. In *Cox*, the defendant pleaded guilty to third degree sexual conduct (forced penetration), with a charge of first degree sexual conduct (forced penetration accompanied by reasonable fear of imminent harm) being dropped. The trial court sentenced the defendant with an upward durational departure based on the victim's injuries, which would have been sufficient to obtain a conviction on the first degree charges. The Minnesota Supreme Court stated that "it would be unfair to base the durational departure solely on the fact" that defendant could have been convicted of first degree sexual con-duct. *Cox*, 343 N.W.2d at 644. However, the court reasoned that the underlying conduct of the defendant was properly considered because it demonstrated that the defendant committed the crime for which he was convicted in a particularly severe manner, even though the same conduct would have been relevant to the more serious charge which was dismissed. *Id.* at 643.

9. The impact of the *Womack* decision is limited to those situations where the aggravating factors relate solely to a charge which was dismissed. *State v. Winchell*, 363 N.W.2d 747, 750 (Minn. 1985). The *Winchell* court stated that the *Womack* holding did not apply when the dropped charge and the adjudicated charge were based on the same evidence. *Id.*

the child's more severe injuries.[10] The trial court was free to consider all of the underlying facts and circumstances in arriving at its sentencing decisions and we believe that consideration of the child's head injuries would fall within the bounds of the trial court's discretion.

## DECISION

The trial court properly imposed a durational and dispositional departure on appellant's sentence. Therefore, we affirm the trial court's sentencing decision.

Affirmed.

DAVIES, Judge (dissenting).

I respectfully dissent. The triple departure here cannot possibly be justified without assuming as fact the unproven suggestion that appellant caused the baby's skull fracture.

This case is prohibited by *State v. Womack*, 319 N.W.2d 17 (Minn.1982). *Womack* holds that it is reversible error in sentencing to consider facts related solely to a dismissed charge.

This case arises from injuries sustained by appellant Donald Byron Pearson's daughter. When the child was admitted to the hospital, doctors discovered bite marks and a skull fracture. Pearson was arrested and charged with first-degree assault for the skull fracture and third-degree assault for the bites. Pearson admitted to biting the baby, but denied causing the skull fracture. He pleaded guilty to the third-degree assault and the state dropped the first-degree assault charge. The presentence investigation report includes Pearson's admission that he bit the baby and his continuing denial that he caused the skull fracture.

The trial court imposed a triple durational departure sentence of 36 months, citing three aggravating factors as justification: the victim's vulnerability due to age; Pear-

son's position of authority as her biological father; and the severity of the injuries.

Although the court listed the victim's age and Pearson's authority position as reasons for the departure, those reasons were overshadowed by the consideration the court gave to the victim's head injuries. The court specifically stated that it was troubled by the "severity" of the baby's injuries, which was a clear reference to the skull fracture and not to bite marks that, in the main, caused bruising.

It is reversible error for a sentencing court to contemplate facts related solely to a dismissed charge when computing a defendant's sentence. *Womack*, 319 N.W.2d at 19–20.

> It is one thing for the sentencing court to look at the conduct underlying the offense to which the defendant pled guilty if the defendant admits that the underlying conduct occurred, but it is quite another thing when the defendant denies that such conduct occurred.
>
> \*   \*   \*   \*   \*   \*
>
> [T]he trial court was not entitled to act as factfinder and determine whether defendant was telling the truth when he [denied the charge]. That being so, we believe that the departure, based on the sentencing court's factfinding, was improper.

*Id.*

The supreme court recently reaffirmed this ruling in *State v. Lubitz*, 472 N.W.2d 131 (Minn.1991), where it held that once a defendant pleaded guilty to one charge and a different charge was dismissed, the fact issue underlying the dismissed charge was removed from the trial court's consideration. *Id.* at 133. The court concluded that sentencing a defendant as if that issue remained in the case deprived the defendant of the benefit of his plea bargain. *Id.* *See also State v. Larkins*, 479 N.W.2d 69, 74–75 (Minn.App.1991) (trial court may not use elements of dropped charge as "substantial and compelling circumstances"

---

**10.** We believe that the defendant could have received a durational departure even if convicted under the more serious charge. Therefore we find no error here for, as the Minnesota

Supreme Court has stated, "departure under such circumstances does not render the plea bargain illusory." *Cox*, 343 N.W.2d at 644–45.

warranting departure where defendant did not admit conduct).

This is precisely the situation before us. Pearson has consistently denied that he caused his daughter's skull fracture, and the charge relating to the skull fracture was dismissed and is *unproven*. The presentence investigation report includes Pearson's denial of guilt for the more serious injury. Therefore, contrary to the majority's conclusion, the trial court was not free to consider the child's head injuries for purposes of sentencing.

The two other aggravating factors cited by the trial court—the victim's vulnerability and Pearson's position of authority—certainly may be considered by the court in deciding whether to depart upward. Such factors may warrant a sentence increase perhaps as high as double the presumptive sentence. A triple departure here, however, can only be explained by the trial court's consideration of conduct underlying the dismissed assault charge stemming from the baby's skull fracture. This is impermissible under current Minnesota law.

This case is not, as the majority suggests, analogous to *State v. Winchell*, 363 N.W.2d 747 (Minn.1985). In *Winchell*, the defendant was charged with aggravated robbery, burglary, and assault. In exchange for dropping the burglary and assault charges, the defendant pleaded guilty to aggravated robbery. The trial court doubled the presumptive sentence, and in doing so relied on facts underlying the robbery charge. On appeal, the defendant argued that the trial court improperly considered evidence relating to the dismissed burglary and assault charges when calculating his sentence.

In contrast to *Womack* and this case, however, the assault charge in *Winchell* was simply a lesser charge based on the same evidence (that he used a gun); the assault charge was superfluous once the defendant agreed to plead guilty to the more serious aggravated robbery charge. Therefore, the supreme court found no error in the trial court considering the evidence about the defendant's use of the gun when calculating his sentence. *Winchell* at 750.

The two charges against Pearson were for separate acts, one charged and proven (by plea), and one now uncharged and always unproven. Because the trial court considered the victim's head injuries in imposing the triple sentencing departure, the trial court committed reversible error.