STATE of Minnesota, Respondent,

v.

Gregory Michael FRANSON, Appellant.

No. CO–86–1340.

Court of Appeals of Minnesota.

April 21, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Jonathan Steinberg, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by NIERENGARTEN, P.J., and PARKER, JUDGE and FOLEY, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellant Gregory Franson was convicted of aggravated robbery, first-degree burglary, second-degree assault, and receiving stolen property. On the first two counts, both severity level VII offenses with presumptive sentences of 65 months, he was sentenced to two concurrent sentences of 100 months each. The other two counts were merged. On appeal Franson contends (1) he was denied effective assistance of counsel; (2) the evidence was insufficient to convict him, in view of his alibi; and (3) an upward durational departure was not justified. We affirm.

## FACTS

Richard Blade is a collector of stamps, coins and jewelry. At approximately 3:45 p.m. on September 23, 1985, Blade encountered a burglary in progress when he returned to his Minneapolis home from a short errand.

At trial Blade testified to the following events: When he entered his locked home, he noticed lights on and the attic door ajar. As he went up the stairs, two armed men jumped him from either side. They called each other by the names "Greg" and "Mike." Blade described Greg as dark-haired, with a moustache, slight build, and a little shorter than himself (5"8"). He described Mike as a little taller than himself, about 140 pounds, slightly built, with "blond, flared hair." Mike pointed a gun at him and threatened to shoot him. Blade recognized this gun to be his own .38 caliber, snub-nosed revolver, which had been hidden under his mattress. Greg jammed a gun in his side, told him to lie on the bedroom floor, and "pistol-whipped" him in the back of the head twice.

Blade testified that the two men then demanded the combination to the safe behind the door. Mike held his gun to Blade's head while Greg tried unsuccessfully to open the safe. When Greg couldn't open the safe, he struck Blade on the head twice more. Finally, Blade opened the safe himself. It took him about four tries, because he was dizzy from the blows he had received. Greg hit him again while he was opening the safe.

Blade testified that, once the safe was open, the men made him lie back down on the floor while Greg emptied the contents of the safe into a pillowcase. From his person they took his gold chain, his watch, and money. They also took another watch and about ten rings from his dresser. Blade estimated the total loss at about $3,000 in cash and $10,000 in jewelry. After tying him up with a nine-foot extension cord, the men left. Blade freed himself in five to ten minutes and called the police.

Robert Friestelben, a friend of Blade's younger brother, told Blade two days later, and subsequently testified at trial, that he saw appellant Greg Franson talking to his brother, Mike Franson, at the home of a mutual friend late on the evening of September 23. He testified that Greg Franson was carrying a "pretty big wad" of cash; was wearing more jewelry than usual; said twice that he had "pistol-whipped" somebody; and said "if he saw Greg, he was going to slap him because half of the stuff that was supposed to be there wasn't there." Friestelben testified that he believed Greg Franson was referring to Greg Windsor, another friend of Blade's younger brother.

On September 27, Lieutenant Huss of the Minneapolis Police Department met with Blade and Friestelben and separately showed them a photographic lineup. Blade picked out two photos that he thought looked similar to the dark-haired man called Greg; one was Greg Franson. Friestelben identified Franson and his brother Mike as the two men whose conversation he reported hearing on the evening of the crime.

Lieutenant Huss testified that a few days later Blade obtained the name of David Michael Bergquist as Franson's possible accomplice. Huss prepared a photo lineup that included Bergquist's picture, but Blade was unable to identify him. However, Lieutenant Huss testified that Bergquist's appearance had changed since the date of the photo used in the lineup.

Minnesota State Trooper Dennis Vandergriff testified that on October 5, 1985, he stopped Bergquist's 1973 Cadillac for a traffic violation and that Greg Franson was in the passenger's seat. Under the armrest was a .38 caliber revolver, and in the trunk were several coins, bills, Olympic coins, coin sheets and sales records. Franson had two rings and a necklace, and Bergquist had a watch, Marlboro lighter, rings and a gold chain. All of these items were seized, and Blade later identified them as his stolen property.

At trial Franson presented an alibi defense through the testimony of his mother, who owns a carpet cleaning service, and DeMona Wilson, her employee, claiming that at the time of the crime he was cleaning Wilson's carpet. He also attempted to establish that the two men who called themselves Greg and Mike may have been Greg Windsor and Mike Franson.

Franson was convicted of aggravated robbery, Minn.Stat. §§ 609.245, 609.11, 609.25 (1984); first-degree burglary, Minn. Stat. §§ 609.582, subd. 1(b), (c), 609.11, 609.05 (1984); second-degree assault, Minn. Stat. §§ 609.222, 609.11, 609.05 (1984); and receiving stolen property, Minn.Stat. § 609.53, subd. 1(1) (1984). The latter two convictions were merged. Franson had a criminal history score of 4. For the burglary and robbery convictions, both severity level VII offenses with presumptive sentences of 65 months, he was given two concurrent sentences of 100 months each.

## ISSUES

1. Was Franson denied the effective assistance of counsel?

2. Was the evidence sufficient to convict him, in view of his alibi?

3. Did substantial and compelling circumstances justify the upward durational departures?

## DISCUSSION

### I

Franson contends he was denied effective assistance of counsel. He bases this contention on two brief excerpts from the trial transcript in which defense counsel elicited testimony from the two alibi witnesses, Franson's mother and her employee, indicating that they knew Franson had a troubled past. Inadequacy of counsel is more appropriately raised in a post-conviction petition so that the reviewing court can have the benefit of learning the reasons for counsel's actions. *See State v. Hanson*, 366 N.W.2d 377, 379 (Minn.Ct. App.1985). Nevertheless, we have reviewed the record and conclude that Franson's contention is without merit.

The Minnesota supreme court has adopted a two-part test for determining whether a defendant is entitled to a new trial on the ground of ineffective assistance of counsel:

> The defendant must affirmatively prove that his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. * * A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Gates v. State*, 398 N.W.2d 558, 561 (Minn. Jan. 9, 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688–94, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984)).

Franson has not met the first part of this test, and therefore we need not address the second. *See id.*, n. 1. His defense counsel was presented with a situation in which the only alibi witnesses might be seen by the jury as predisposed to lie for Franson. Under the circumstances, it would not have been unreasonable for him to attempt to bolster their credibility

by showing that they would be honest in their appraisal of him.

## II

 Franson contends the evidence is insufficient to convict him, because his alibi defense created a reasonable doubt of guilt. The weight of alibi evidence is for the jury. *State v. Otten,* 292 Minn. 493, 495, 195 N.W.2d 590, 591 (1972). Here the jury evidently disbelieved the alibi witnesses. Viewing the evidence in the light most favorable to the State, as we must on review, we find the evidence sufficient to sustain the convictions. *See State v. Merrill,* 274 N.W.2d 99, 111 (1978).

## III

 Franson contends the trial court erred by departing from the Minnesota Sentencing Guidelines. An upward departure will be upheld when the defendant's conduct is significantly more serious than that typically involved in the commission of the crime. *State v. Gist,* 358 N.W.2d 664, 667 (Minn.1984); *State v. Garcia,* 302 N.W.2d 643 (Minn.1981). We hold that an upward departure is warranted on two of the three grounds cited by the trial court.

One aggravating factor which may be used as reason for departure is that "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible." Minnesota Sentencing Guideline II.D.2.b.(2). One recognized form of "particular cruelty" is gratuitous infliction of pain. *State v. Schantzen,* 308 N.W.2d 484, 487 (Minn.1981). The evidence in this case is that the dark-haired man, whom Blade later identified in a photo lineup and at trial as Franson, struck Blade repeatedly on the back of the head with a gun. Some of the blows were delivered while Blade was lying face-down on the floor in a helpless position; others were delivered as Blade, already dazed and bleeding from previous blows, was trying to open his safe at the intruders' command. We agree with the trial court that this conduct is "particular cruelty" within section II.D.2.b.(2). (The trial court also cited as particular cruelty, death threats made to the victim. However, a careful reading of the transcript reveals that it was "Mike" who made these threats.)

Another ground for departure, when it is not an element of the offense, is invasion of the victim's zone of privacy. *State v. Winchell,* 363 N.W.2d 747, 750 (Minn.1985). We agree with the trial court that this was a proper ground for departure in sentencing Franson on the aggravated robbery conviction, because the robbery took place in Blade's own bedroom.

We hold that the trial court acted properly in making upward departures of 35 months on the first-degree burglary and aggravated robbery convictions, both severity level VII offenses.

## DECISION

Affirmed.