**STATE of Minnesota, Respondent,**

v.

**Andre D. ANDERSON, Appellant.**

**No. C3–84–1846.**

Court of Appeals of Minnesota.

July 2, 1985.

Review Denied Sept. 19, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Anne E. Peek, Asst. Co. Atty., Minneapolis, for respondent.

Robert C. Sipkins, Minneapolis, for appellant.

Heard, considered and decided by WOZ-NIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Andre Anderson was convicted by a jury of assault in the first degree, Minn.Stat. § 609.221 (1982), for severely beating Kelly Matthews. He claims that the conviction was not supported by sufficient evidence and that a double durational sentencing departure was unjustified. We affirm.

## FACTS

Appellant lived with Kelly Matthews and her three young daughters in Minneapolis. Their relationship was stormy, filled with episodes where appellant was intoxicated and struck Kelly. On the morning of January 21, 1982, Kelly asked appellant to move out. That evening, appellant returned and walked directly to Kelly's basement bedroom. Puzzled, Kelly followed and asked appellant what was wrong. Appellant re-

plied: "What have you been doing, girl?" She answered: "Nothing." He repeated his question and Kelly repeated her answer.

Appellant then punched Kelly in the temple with his fist. Meanwhile Kelly noticed her girls had crept downstairs. Appellant asked his question again and knocked her down to the floor. He grabbed her by her hair and punched her in the head repeatedly. Kelly testified that it was obvious appellant had been drinking heavily. She had difficulty remaining conscious and was continually slammed into walls.

Appellant also ordered Kelly to get down on her knees and place her head on the floor. She refused but appellant struck her again and she fell to her knees. Appellant grabbed her hair, pushed her head to the floor and stamped on her head twice with his foot. By this time Kelly's head felt numb and she was bleeding badly. Appellant screamed and called Kelly "a bitch." Kelly was unable to stand up. While she was lying on her side, appellant kicked her in the stomach. She rolled over on her back and appellant stamped on her stomach over and over with his foot. When Kelly's daughter crawled over to her, appellant stopped. He had been beating Kelly for over an hour.

Kelly was eventually taken to the Hennepin County Medical Center. She suffered from a bleeding laceration of the right lobe of her liver. Testimony indicated this was a life threatening injury. Kelly also suffered a laceration on her head, and bruises to the pelvis and mesentery and other areas of the body. She remained in the hospital for seven days. At trial, two and one-half years later, she still had a long scar from her lower abdomen to the upper chest.

Appellant did not testify. The jury was instructed on assault in the first, second and third degrees and found appellant guilty of assault in the first degree. The trial court sentenced appellant to 108 months in prison, double the presumptive term provided in sentencing guidelines.

## ISSUES

1. Was the evidence sufficient to support a conviction for assault in the first degree?

2. Was the double durational departure justified by substantial and compelling circumstances?

## ANALYSIS

### I.

Minn.Stat. § 609.221 (1982) describes assault in the first degree:

> Whoever assaults another and inflicts great bodily harm may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both.

Great bodily harm is defined as:

> [B]odily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm.

Minn.Stat. § 609.02, subd. 8 (1982).

Appellant contends that there was insufficient evidence to prove the element of "great bodily harm," and that the evidence showed only "substantial bodily harm," Minn.Stat. § 609.02, subd. 7a (1982), an element of assault in the third degree. Minn. Stat. § 609.223 (1982).

To examine a claim of insufficiency of the evidence, we must determine:

> [W]hether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. * * * The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence.

*State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981).

There was no evidence showing that Kelly suffered "permanent or protracted loss or impairment of the function of any bodily member or organ" under section 609.02. This is one of three specific categories of "great bodily harm."

■ The jury could have determined that the evidence was sufficient to find that the long scar running the length of Kelly's upper body, which was still present two and one-half years after the injury was inflicted, constituted "serious permanent disfigurement." We reject appellant's argument that such a scar is not "permanent" because it could be concluded from Kelly's testimony that she was considering having it removed by plastic surgery.

■ The jury could also have found that the liver laceration which Kelly suffered as a result of appellant's assault created "a high probability of death." One of the examining physicians testified that the liver laceration was a "life-threatening" injury: "[It] is a serious injury because if the bleeding does not stop or is not stopped, a person can bleed and die."

Finally, Kelly's injuries, taken as a whole, constitute "other serious bodily harm." The supreme court has found that similar injuries fall into this category. In *State v. Jones*, 266 N.W.2d 706, 710 (Minn. 1978), the supreme court held there was sufficient evidence to sustain a verdict that the defendant had inflicted "great bodily harm," where the complainant was found unconscious, remained in the hospital a week, and suffered numbness, dizziness and headaches.

Appellant contends that the injuries in the category of "other serious bodily harm" must be in the same kind or class as those particularly stated in the statute, and that Kelly's injuries were not. Appellant's argument is based on the doctrine of *ejusdem generis*, codified in Minn.Stat. § 645.08(3) (1982); "[g]eneral words are construed to be restricted in their meaning by preceding particular words." The doctrine is particularly applicable to statutes defining crimes and regulating their punishment. *State v. End*, 232 Minn. 266, 272, 45 N.W.2d 378, 381 (1950).

■ The standard for interpreting general words is not to be applied inflexibly, and will be used to determine the intent of the legislature. *Village of Brooten v. Cudahy Packing Co.*, 291 F.2d 284, 298 (8th Cir.1961). Kelly Matthew's injuries included a lacerated liver, a laceration on her head which required stitches, bruises, other head injuries which caused lapses of consciousness, and a long scar running the length of her upper body. We conclude that the injuries which Kelly suffered, requiring emergency lifesaving surgery, are within the same class or kind of injuries as the three specific categories of injuries listed in Minn.Stat. § 609.02, subd. 8.

In summary, the jury's verdict was amply supported by the evidence.

## II.

In departing from sentencing guidelines, the trial court relied on the following factors:

1. The assault was totally uncalled for on the helpless victim.

2. The assault involved repeated kicks by defendant to the head of the victim and later involved repeated kicks to the body of the victim resulting in a fracture of the liver. A surgical procedure, exploratory laparotomy, was necessary to stop the internal bleeding of the victim.

3. A surgical scar remains a permanent reminder to the victim which extends from her lower [abdomen] to her upper chest.

4. Subsequent to this offense additional assaults were made on the victim causing her to fear for her life and her reluctance to prosecute this assault.

■ The departure was justified by the particular cruelty inflicted on the victim. Minnesota Sentencing Guidelines II.D. 2.b.(2). This assault was more serious than the typical first degree assault. *See State v. McClay*, 310 N.W.2d 683 (Minn.1981).

It is true that the essential element of first degree assault is great bodily harm

and that some of Kelly's injuries are included within the definition of great bodily harm. However, appellant's conduct was particularly egregious. The beating was prolonged, with appellant stamping repeatedly on the victim's head and body. Appellant aggravated the beating by ordering Kelly to put her head on the floor so appellant could stamp on her head; this degrading treatment was not necessary to the offense. Further, the assault took place in the presence of the victim's children, which is a "particularly outrageous act." *State v. Winchell,* 363 N.W.2d 747, 751 (Minn.1985), *quoting State v. Profit,* 323 N.W.2d 34, 36 (Minn.1982). Finally, appellant beat Kelly in the bedroom of her own home, a further aggravating factor. *Winchell,* 363 N.W.2d at 750.

## DECISION

Appellant's conviction for assault in the first degree is affirmed. The double durational sentencing departure was justified.

Affirmed.