STATE of Minnesota, Respondent,

v.

Donald Thomas
WICKSTROM, Appellant.

No. C6–86–1327.

Court of Appeals of Minnesota.

May 5, 1987.

Review Denied June 30, 1987.

Hubert H. Humphrey, III, Atty. Gen., William F. Klumpp, Jr., Sp. Asst. Atty. Gen., St. Paul, Richard Arney, Washington Co. Atty., Stillwater, for respondent.

Douglas Peine, Philip G. Villaume, St. Paul, Bruce H. Hanley, Minneapolis, for appellant.

James E. Rudnik, St. Paul, for amicus curiae Washington County Family Violence Network.

Heard, considered and decided by POPOVICH, C.J., and LANSING and MULALLY,* JJ.

## OPINION

MULALLY, Judge.

Appellant Donald Wickstrom was convicted of first-degree assault, criminal abortion and fifth-degree assault, following a trial to the court. He appeals from the judgment of conviction, from an order denying his motions for a new trial and to vacate the judgment, a pre-trial order permitting the State to amend the indictment, and the sentence of 107.5 months, a two-and-one-half-times departure from the presumptive sentence for first-degree assault. An amicus brief has been filed by the Washington County Family Violence Network on the sentencing issue. We affirm.

## FACTS

The charges against appellant Donald Wickstrom arose out of an incident occurring August 26, 1985 at the home of his mother Gayle Gonsoir. Wickstrom assaulted Gonsoir and his former girlfriend, Cynthia Hall, who was eight-months pregnant with his child.

The assaults followed an argument with Hall over money Wickstrom owed her. Wickstrom hit each of the women, pulled their hair, and kicked Hall with hard-toed boots, some of the kicks landing on her abdomen. Hall's three-year-old son, Jason, witnessed the assault, at one point being shielded by his mother. Hall did not fight back.

Wickstrom's mother was struck several times when she tried to intervene to stop the assault. Wickstrom persisted despite the pleas of both women. At one point, Hall told him she was having cramps and

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

was going to go to the hospital. He then stopped and asked her if she was okay, but began beating her again when she tried to get to her car.

Wickstrom testified he had had six to eight beers at a bar that afternoon, and eight more beers and two shots of whiskey at a restaurant before going to his mother's. Wickstrom testified he was drunk, and did not intend to hit either Hall or his mother, but "might have" kicked and struck both women, and pulled their hair. Hall and Gonsoir disagreed on whether Wickstrom showed signs of intoxication. The police officers who later arrested and interviewed Wickstrom saw no signs of intoxication.

Part of the assault was witnessed by two women passing by, one of whom yelled at Wickstrom to stop. When he did so, Hall escaped. After leaving her son at a cousin's, Hall drove to St. John's Hospital Northeast, where she was examined in the hospital emergency room at 8:35 p.m.

The emergency room physician twice noted a fetal heart rate of about 160 beats per minute, which is in the normal range, within an hour of Hall's arrival. He noted multiple abrasions and contusions on Hall's arms, temple, abdomen, back and feet. At 9:30 he called Hall's personal physician, who ordered her taken to the labor and delivery room for continuous monitoring of fetal heart tones. Hall was taken to labor and delivery at 10:15. At that time, the fetal heart rate was measured at 60 to 80 beats per minute, which signifies severe fetal distress. An obstetrician was called and a Cesarean section performed at 11:25 p.m. A female child was delivered with no signs of life and resuscitation efforts were unsuccessful.

Wickstrom testified he did not intend to abort the pregnancy. He stated he was happy about the pregnancy, and had attended prenatal classes with Hall. Both Hall and Gonsoir agreed that Wickstrom wanted the child. Hall stated Wickstrom was happy she was pregnant and wanted to get back together with her. She confirmed he had attended prenatal classes. She thought Wickstrom was trying to hurt her, but not the baby.

The grand jury indicted Wickstrom for second-degree felony murder, first-degree assault, and criminal abortion under Minn. Stat. § 145.412, subd. 3 (1986). He was indicted for fifth-degree assault for the attack on Gonsoir. The trial court later dismissed the felony murder charge, ruling that a fetus is not a "human being" for purposes of the homicide statutes. The trial court also dismissed the criminal abortion charge, because much of subdivision 3 had been declared unconstitutional. *See Hodgson v. Lawson*, 542 F.2d 1350 (8th Cir.1976). The court, however, granted the State's motion to amend the indictment to charge a violation of subdivision 1 of that statute.

The defense presented an expert witness, Dr. Peter Watson, a perinatologist who testified the hospital's failure to immediately place Hall on a continuous fetal monitor was negligent. He stated the baby's life would have been saved by immediate continuous monitoring, which would have revealed fetal distress by 9:00 p.m., allowing time for a successful Cesarean operation. He stated that, from the abdominal trauma, the emergency room physician should have assumed abruptio placenta, or separation of the placenta, until he was able to rule out that possibility.

The obstetrician who performed the Cesarean stated an earlier operation would have saved the child, but that there were insufficient signs of abruptio placenta, and thus no basis for ordering a Cesarean. The pathologist testified the external abrasions on the abdomen were close to the site of placental separation, and that a kick from Wickstrom's boots was sufficient force to cause the abruptio, which was also potentially life-threatening to the mother.

Wickstrom was found guilty of all counts. The court found that Wickstrom "wilfully performed an abortion" on Hall, as required by the criminal abortion statute, that the alleged negligence of the hospital was not an intervening cause of the death of the fetus, and that Wickstrom was not so intoxicated as to prevent him from

forming the intent to assault Hall and Gonsoir.

The court sentenced Wickstrom to 107.5 months in prison for the first-degree assault. The court cited several aggravating factors justifying the departure: the particular cruelty of the assault, including Hall's pregnant state and the presence of her son; the duration of the assault; the increased vulnerability of the victim; and the fact the assault was much more severe than a typical first-degree assault. Wickstrom was not sentenced on the criminal abortion conviction. *See* Minn.Stat. § 609.035 (1986) (prohibiting multiple punishment for a single behavioral incident).

### ISSUES

1. Did the trial court abuse its discretion in allowing the state to amend the indictment?

2. Does Wickstrom's conduct constitute the crime of abortion as defined in Minn. Stat. § 145.412, subd. 1?

3. Did the trial court err in concluding the criminal abortion statute does not require a specific intent to terminate the pregnancy?

4. Did the trial court err in concluding the actions of the hospital staff were not an intervening cause relieving Wickstrom of responsibility for the death of the fetus?

5. Was the sentencing departure an abuse of discretion?

### ANALYSIS

*1. Amending the indictment*

Wickstrom contends the trial court abused its discretion by allowing the prosecution to amend the indictment to charge a violation of subdivision 1 of the criminal abortion statute. He contends this action circumvented the grand jury and usurped its function by allowing the State to charge an offense different from the one considered by the grand jury. He argues an indictment may only be amended by the grand jury.

Minn.R.Crim.P. 17.05 provides:

The court may permit an indictment or complaint to be amended at any time before a verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

The rule supersedes a statute which applied only to indictments, and allowed amendments by the prosecutor "provided no change is made in the name or identity of the crime charged." Minn.Stat. § 628.19 (1978) (repealed).

The rule has not been construed with respect to pre-trial amendments of indictments. *Cf. State v. Alexander,* 290 N.W.2d 745 (Minn.1980) (amendment of complaint during trial). Although the supreme court in *State v. Doeden,* 309 Minn. 544, 546, 245 N.W.2d 233, 234 (1976) indicated the rule refers to motions to amend made after the commencement of trial, there is no apparent reason to bar amendments before trial which can be made during trial.

The language of the rule is plain and unambiguous, and we find no reason to construe it. The rule allows an amendment to an indictment if no additional or different offense is charged, a condition we believe sufficient to protect the function of the grand jury.

Minn.Stat. § 145.412, subd. 1 (1986) provides:

It shall be unlawful to *wilfully perform* an abortion unless the abortion is performed:

(1) by a physician licensed to practice medicine * * *;

(2) in a hospital or abortion facility if the abortion is performed after the first trimester;

(3) in a manner consistent with the lawful rules promulgated by the state commissioner of health; *and*

(4) with the consent of the woman submitting to the abortion after a full explanation of the procedure * * *.

(Emphasis added). Subdivision 3, under which Wickstrom was originally indicted, also sets out a list of conditions, all of which must be met or the abortion is un-

lawful. In pertinent part, that statute provides:

It shall be unlawful to *perform* an abortion when the fetus is potentially viable unless:

(1) the abortion is performed in a hospital;

\* \* \* \* \* \*

Minn.Stat. § 145.412, subd. 3 (emphasis added).

▮ Wickstrom's contention that each subdivision (i.e. subdivision 1 and subdivision 3 of Minn.Stat. 145.412) charges a different offense ignores the statutory requirement that as to each subdivision *all* conditions be met or the abortion is unlawful. As to each subdivision a violation of one condition is sufficient to support a charge of criminal abortion. Each condition is not an essential element of the offense. Although the indictment charged Wickstrom with violating all the statutory conditions, it was not necessary to do so. *See State v. Oman*, 265 Minn. 277, 121 N.W.2d 616 (1963) (in testing an indictment, the court looks to the elements of the offense rather than the exact statutory language). It is sufficient under each subdivision that the abortion was not performed in a hospital (or abortion facility).

The two provisions do differ in that only subdivision 1 requires the act be "wilfully" performed, and we would agree the amendment circumvented the grand jury if only the amended indictment charged a specific intent offense. The grand jury, however, was instructed it had to find probable cause to believe Wickstrom "wilfully perform[ed]" an abortion in violation of subdivision 3. The grand jury was told the State's position that Wickstrom did not have to intend the termination of pregnancy. That position, however, was the same under subdivision 1. The original indictment itself charged Wickstrom with "wilfully perform[ing]" an abortion. Therefore, the grand jury did find probable cause to establish the same offense charged in the amended indictment. Because of the actual language given the grand jury, the amended indictment did not charge Wickstrom with a different offense.

### 2. *The offense of criminal abortion*

Wickstrom contends his conduct does not fit within the terms of the statute because the statute was intended to apply only to clinical, consensual abortions. We disagree.

▮ Wickstrom's argument focuses not on the language of Minn.Stat. § 145.-412, subd. 1, but on its presumed intent. It is unnecessary, however, to search for a legislative intent since the statute is unambiguous with respect to Wickstrom's conduct. If the language of a penal statute is clear and unambiguous, it is not necessary to resort to any aids in construction. *State v. Forsman*, 260 N.W.2d 160, 164 (Minn. 1977). Wickstrom's conduct was the conduct most plainly proscribed by the statute because it violated *all* the conditions required to make abortions lawful.

A process of statutory construction would lead to the same result. The supreme court noted the history of prior legislation in *State v. Soto*, 378 N.W.2d 625, 628 n. 6 (Minn.1985). The previous criminal abortion statute applied to "[e]very person" intentionally acting to produce a miscarriage. Minn.Stat. § 617.18 (1972 Supp.) (repealed). It included no language limiting its scope to physicians, to clinical settings or to consensual abortions. That act in turn had replaced a feticide provision of similarly broad scope. Minn.Stat. § 619.16 (1961) (repealed). The present statute was enacted in response to *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), limiting governmental restrictions on consensual abortions. It does not follow, however, that the statute encompasses only consensual or clinical abortions simply because constitutional objections arose only in that area. *See id.* at 166, 93 S.Ct. at 733 (State may proscribe any abortion by a nonphysician).

### 3. *Specific intent*

Wickstrom contends the phrase "wilfully perform an abortion" introduces as an element of the offense a specific intent to

terminate the pregnancy. *See* Minn.Stat. § 145.412, subd. 1.

■ The term "wilfully" is not among those used to denote specific intent as an element of a crime. *See* Minn.Stat. § 609.-02, subd. 9(1) (1986). The supreme court stated in *State v. Bowers,* 178 Minn. 589, 591, 228 N.W. 164, 165 (1929):

> The most common definition of the word "wilfully" as used in a penal statute, is that it means with a bad purpose or an evil intent.

*See also State v. Green,* 351 N.W.2d 42, 44 (Minn.Ct.App.1984) ("wilful" may have a different meaning in misdemeanor statutes). The court in *Bowers* held that the term "wilfully" did not import a specific intent requirement.

■ The statute defines "abortion" as follows:

> "Abortion" includes an act, procedure or use of any instrument, medicine or drug which is supplied or prescribed for or administered to a pregnant woman which results in the termination of pregnancy.

Minn.Stat. § 145.411, subd. 5 (1986). This definition is broad enough to include an assault committed upon the pregnant woman. Moreover, the statute proscribes an act which *results* in termination of pregnancy, rather than one which is designed to produce a termination of pregnancy.

Had the legislature intended to make specific intent an element of the offense, it would have used language denoting that mental state, such as "with intent to," or so defined "abortion" as to include intent. We read the statute as requiring only the general intent "to do the act which is prohibited by the statute," *State v. Lindahl,* 309 N.W.2d 763, 766 (Minn.1981), under the conditions under which it is prohibited.

### 4. Intervening cause

Wickstrom contends the hospital's alleged negligence in treating Hall was an intervening cause of the fetal death, relieving him of criminal responsibility under the abortion statute.

■ We need not fully address the issue of causation. The statute requires that the defendant's act "results in the termination of pregnancy." Minn.Stat. § 145.411, subd. 5. Our supreme court has not expressly decided whether improper medical treatment which is not the sole cause of death may relieve a defendant of criminal responsibility for that death. *Cf. State v. James,* 123 Minn. 487, 490–91, 144 N.W. 216, 217 (1913) (in order to establish a causal connection, the State had to prove that pneumonia causing death entered lungs through stab wound and not during treatment). Even in those jurisdictions recognizing such a defense, however, it is generally held that negligent treatment of the victim does not relieve a defendant of criminal responsibility for his death unless it is "so bad as to constitute gross negligence or intentional malpractice." LaFave and Scott, *Criminal Law* § 35 (1972); *see also People v. Flenon,* 42 Mich.App. 457, 202 N.W.2d 471, 474 (1972) (something more than ordinary negligence is required to exculpate a defendant).

There was no testimony indicating the hospital was grossly negligent, and the evidence would not support such a claim. We note the fetal heart rate was measured twice in the first 45 minutes after Hall arrived in the emergency room, and found to be normal. The abruptio placenta that occurred in this case was a relatively infrequent type lacking observable symptoms.

### 5. Sentencing departure

■ The trial court cited six aggravating factors furnishing "compelling and substantial reasons" justifying the departure. Departure due to aggravating circumstances is generally limited to a double departure. *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). A greater departure is justified only when there are severe aggravating circumstances. *Id.; see State v. Mortland,* 399 N.W.2d 92, 94 (Minn.1987).

■ The vulnerability of the victim here, a woman in her eighth month of pregnancy, is uniquely compelling. The length of the assault, estimated at about 20 minutes, and the fact it continued despite the interventions of Wickstrom's mother and de-

spite Hall's complaint of abdominal cramps, indicated a particularly severe offense. Another aggravating factor was the presence of Hall's son during the assault. *See State v. Winchell*, 363 N.W.2d 747, 750–51 (Minn.1985) (affirming double departure, court noted that victim's four-year-old daughter was present during assault); *see also State v. Anderson*, 370 N.W.2d 703, 707 (Minn.Ct.App.1985), *pet. for rev. denied* (Sept. 19, 1985) (assault occurred in front of victim's children). Another factor was the longlasting effects on both Hall and her son, who have required professional counseling. *See Mortland*, 399 N.W.2d at 95 (severe psychological damage to child victim of sexual assault); *see also State v. Norton*, 328 N.W.2d 142, 146 (Minn.1982) (child kidnapping and sexual assault victim needed psychiatric counseling). We conclude there were severe aggravating circumstances justifying a greater-than-double durational departure.

Wickstrom's conduct was significantly more aggravated than that in *Anderson*, where we upheld a double durational departure. 370 N.W.2d at 705. In *Anderson*, an assault on a female in the presence of a young child, the victim was not pregnant; moreover, there were no attempts at intervention, and no evidence of long-term psychological effects. Although Wickstrom contends he did not intend to exploit Hall's vulnerability, the trial court could have inferred otherwise from the manner of the assault.

The amicus, Washington County Family Violence Network, contends the "domestic setting" of an assault should be recognized as a permissible aggravating factor. This proposed aggravating factor was not argued by the parties here, nor considered by the trial court. Amicus contends that although specific aggravating factors relate to aspects of domestic assaults, e.g., vulnerability of the victim, invasion of the "zone of privacy," and psychological effects of assaults, this fragmented approach fails to recognize the generally aggravated severity of domestic assaults. *But see* Minnesota Sentencing Guidelines, Comment, II.D.201 (guidelines commission has chosen to aggravate based on factors which are specific rather than general in nature). Wickstrom's conduct was sufficiently aggravated when judged under existing factors. Whether the "domestic setting" of an assault is an appropriate aggravating factor should be left to a case properly presenting that issue.

## DECISION

The trial court did not abuse its discretion in allowing the State to amend the indictment. Wickstrom's conduct does not fall outside the scope of the criminal abortion statute. The trial court did not err in concluding that statute does not require specific intent. The trial court did not err in finding no gross negligence establishing a superseding cause of the fetal death. The trial court did not abuse its discretion in imposing a sentence two-and-one-half times greater than the presumptive sentence.

Affirmed.