*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1453**

State of Minnesota,
Respondent,

vs.

Patrick Michael Aleman,
Appellant.

**Filed September 12, 2016
Affirmed
Kirk, Judge**

Crow Wing County District Court
File No. 18-CR-14-658

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Brainerd, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Bjorkman, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Following a bench trial, appellant Patrick Michael Aleman was convicted of first-degree assault (great bodily harm), third-degree assault (substantial bodily harm), and domestic assault by strangulation. Aleman represented himself. On appeal, he argues

that the first-degree assault conviction must be reversed because the state failed to prove "great bodily harm" beyond a reasonable doubt. He also argues that he was denied the right to present a defense when the district court did not allow him to recall the complainant, C.H., as a witness. Additionally, Aleman challenges the credibility of C.H.'s trial testimony. We affirm.

## FACTS

At approximately 2:50 a.m. on February 18, 2014, S.C., a friend of C.H., called 911 to report that C.H. was badly injured. Law enforcement and medical assistance arrived on scene. C.H.'s body was covered in bruises, she had facial injuries, and she was trembling, crying, and complaining of difficulty breathing. C.H. claimed she had fallen but did not provide more information that morning. C.H. appeared to be in a lot of pain and was not able to walk to the ambulance without assistance. S.C. reported that C.H.'s boyfriend, Aleman, was a possible person of interest and that he was driving a white Jeep.

C.H. was treated in the emergency room and released from the hospital. That evening, S.C. contacted law enforcement again because C.H. decided to provide a statement. A law enforcement officer went to S.C.'s home to speak to C.H. At that time, C.H. still appeared to be in a great deal of pain. C.H. reported that Aleman assaulted her. The officer observed what looked like a bite mark on C.H.'s face, a number of bruises and cigarette burns on C.H.'s body, including a deep, painful looking burn on her right breast, and a broken tooth. After taking C.H.'s statement, the officer located and arrested Aleman, who denied the assault.

2

At trial, C.H. testified that on February 13, 2014, Aleman punched her in the hip when he was angry, which caused her to have difficulty walking. Over the weekend, February 15-16, Aleman remained angry and punched and hit C.H. "a lot" all over her body, including her face. On Monday, February 17, C.H. was very sore and her face was swollen. That night, Aleman was angry again and started punching C.H. Aleman punched C.H. repeatedly in the ribs and the left side of her body. He also bit C.H. on the lips and cheek and put cigarettes out on C.H.'s body, leaving burn marks.

C.H. also testified that Aleman head-butted her, breaking her tooth. She testified that she had the tooth repaired a few weeks after the assault. Before the tooth was repaired, it hurt and impaired her ability to eat. C.H. had to chew and bite on the sides of her mouth because chewing with her front teeth would break the tooth further. Aleman testified that C.H. broke her tooth prior to the February 17 assault, but the other witnesses who testified corroborated C.H.'s testimony that the injury did not exist before the assault.

C.H. also testified that Aleman choked her by placing his hands around her throat and squeezing. This made it difficult for C.H. to breathe and caused her to get dizzy and feel like she was going to pass out. After choking her, Aleman smothered C.H. by placing a pillow over her face, causing her to lose consciousness. When C.H. woke up, she had difficulty moving and breathing and was in a lot of pain.

After her initial emergency room visit, C.H. had to seek additional medical attention for her ribs because they were "popping." C.H.'s ribs were bruised and possibly separated. C.H. also testified about rib pain she experienced during a pregnancy after the

3

assault. The rib pain during her pregnancy was related to the injuries Aleman inflicted on February 17, 2014. C.H. testified that she still experiences rib pain related to the assault and that she expects to experience intermittent pain for some time.

Dr. Rebecca Holcomb, who attended to C.H. at the emergency room on February 18, testified that C.H. presented with many injuries, including a fractured front tooth, which was a very visible injury. C.H.'s lips were very swollen, but she had no bleeding in her mouth. R.N. Debra Blowers testified that it is possible for someone to be hit in the face with enough force to break a tooth without the person also experiencing bleeding in the mouth. Dr. Holcomb noted that the broken tooth put C.H. at a significantly increased risk for tooth decay, cavity, and injuries to her lips when eating. The broken tooth would also cause it to be very painful to eat for several days to weeks. It is impossible for a broken tooth to fix itself.

Dr. Holcomb also testified that C.H. presented with several small puncture wounds, bruising, and cigarette burns.[1] Dr. Holcomb described a cigarette burn on C.H.'s right breast as a deep second-degree burn, and a burn at the base of her neck as a "healing second[-]degree burn." Dr. Holcomb explained that "[a] second[-]degree burn is a burn that involves a deeper, firmer or heat-related injury that would have caused blistering of the skin." It is possible that the burn was actually a third-degree burn because it involved deeper tissue. Dr. Holcomb noted that "deep second[-]degree and third[-]degree burns run a significant risk of scarring." The burn on C.H.'s right breast

---

[1] C.H.'s injuries were photographed by hospital staff, law enforcement, and S.C. Those photographs were admitted into evidence at trial.

was several millimeters deep, and would have required "prolonged extremely hot forced placement on the skin." C.H. also had a second-degree burn on her lower back. The burns on C.H.'s right breast and lower back resulted in permanent scarring.

Dr. Holcomb further testified that if someone is suffocated into unconsciousness, like C.H. was, there is a risk of death. Dr. Holcomb classified the assault on C.H. as a "potentially homicidal assault" which is "an assault where the life of . . . the victim could have been lost . . . due to that assault."

The day after C.H. testified, and after Dr. Holcomb and R.N. Blowers testified, Aleman asked to subpoena and recall C.H. as a witness. Aleman argued that he should be allowed to recall C.H. because he failed to adequately cross-examine her about how she was head-butted and wanted to "get more clarification" after hearing the medical testimony about broken teeth and related bleeding in the mouth. The state objected because C.H. resided out of the area and because Aleman already had the opportunity to question her about being head-butted. Aleman acknowledged that he had the opportunity to cross-examine C.H. and that she had testified about being head-butted. The district court denied Aleman's request because he already had the opportunity to cross-examine C.H. on that point.

Aleman appeals.

**D E C I S I O N**

## I. There was sufficient evidence for the district court to find, beyond a reasonable doubt, that C.H. suffered great bodily harm.

In considering a claim of insufficient evidence, this court's review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the [fact-finder] to reach the verdict which [it] did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume the fact-finder "believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989) (*Moore I*). The reviewing court will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Aleman was convicted of first-degree assault resulting in great bodily harm. Minn. Stat. § 609.02, subd. 8 (2012), defines "great bodily harm" as a "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Whether an injury constitutes great bodily harm is a question for the fact-finder. *State v. Moore*, 699 N.W.2d 733, 737 (Minn. 2005) (*Moore II*, unrelated to *Moore I*).

The district court concluded that the state proved beyond a reasonable doubt that the injuries Aleman inflicted upon C.H. rose to the level of "great bodily harm" because

6

they constituted "serious permanent disfigurement," "protracted loss or impairment of a bodily member," and "other serious bodily harm." Aleman disputes the district court's conclusions.[2]

The district court concluded that C.H.'s injuries constituted "other serious bodily harm" in Minn. Stat. § 609.02, subd. 8, which focuses on the complainant's injuries as a whole, including the need for hospitalization, the use of stitches or staples to treat the injuries, and significant bleeding, bruising, and/or lapses of consciousness. *See State v. Jones*, 266 N.W.2d 706, 710 (Minn. 1978) (concluding that the following injuries constituted other serious bodily harm: loss of consciousness, numbness in her leg for several weeks, dizziness and headaches until just before trial, and numbness in her teeth at trial); *State v. Anderson*, 370 N.W.2d 703, 706 (Minn. App. 1985) (concluding that the following injuries constituted other serious bodily harm: "a lacerated liver, a laceration on her head which required stitches, bruises, other head injuries which caused lapses of consciousness, and a long scar"), *review denied* (Minn. Sept. 19, 1985). This court considers the totality of a complainant's injuries when evaluating a finding of "other serious bodily harm." *See State v. Barner*, 510 N.W.2d 202, 202 (Minn. 1993) (concluding that the following injuries constituted other serious bodily harm: swelling in

---

[2] Aleman claims the district court relied on circumstantial evidence to find great bodily harm, so his conviction should be subjected to "heightened scrutiny." *See State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). But the evidence here consisted of photographs of C.H.'s injuries and scars and testimony about C.H.'s injuries. This is direct evidence and heightened scrutiny is not required. *Bernhardt*, 684 N.W.2d at 477 n.11 (defining direct evidence).

7

complainant's head impaired eating for three days, and complainant had multiple scars from stab wounds and a hand injury which affected his leisure activities).

Aleman argues that the district court's reliance on C.H. being rendered unconscious in finding "other serious bodily harm" was improper. Aleman, citing *State v. Larkin*, argues that unconsciousness only amounts to "substantial bodily harm." 620 N.W.2d 335, 337 (Minn. App. 2001) ("[W]e conclude that temporary loss of consciousness, on its own, is substantial bodily harm."). Aleman also argues that, although the district court relied on the totality of C.H.'s injuries including unconsciousness, the other injuries identified by the district court, C.H.'s burns and scars, broken tooth, and injured ribs, were not severe enough to constitute great bodily harm.

In *Larkin*, this court held that a temporary loss of consciousness alone constitutes *at least* substantial bodily harm. *Id.* Whether or not unconsciousness could rise to the level of great bodily harm was not addressed in the *Larkin* decision, although the *Larkin* court did mention a supreme court decision which noted that "'[a]rguably, "great bodily harm" is inflicted if one knocks someone out briefly.'" *Id.* at 336-37 (quoting *State v. Stafford*, 340 N.W.2d 669, 670 (Minn. 1983)). The state argues that unconsciousness combined with other significant injuries, such as those suffered by C.H., rise to the level of "other serious bodily harm" and support the conviction in this case, especially because the period of unconsciousness C.H. experienced caused a high risk of death.

The district court heard evidence that C.H. experienced a period of unconsciousness caused by the assault, and heard and saw evidence that C.H. experienced multiple burns, permanent scarring, and substantial pain, bruising, and

8

swelling.  There were a number of exhibits depicting fading burns, but the photographs of the burns on C.H.'s right breast and lower back appeared fresh when they were documented.  The district court also heard evidence that Aleman head-butted C.H., breaking her tooth, and that she continues to suffer from rib pain.  Viewing the evidence in the light most favorable to the conviction, the district court reasonably concluded that C.H.'s injuries, in their totality, amounted to "other serious bodily harm" arising to the level of "great bodily harm."

The district court also concluded that under Minn. Stat. § 609.02, subd. 8, C.H. experienced "serious permanent disfigurement" amounting to "great bodily harm."  The district court found that C.H.'s broken tooth amounted to serious permanent disfigurement, and that, although the scars on C.H.'s right breast and lower back did not amount to serious permanent disfigurement alone, they did amount to serious permanent disfigurement when combined with her broken tooth.  Viewing the evidence of C.H.'s broken tooth and scars, which could not heal themselves, in the light most favorable to the conviction, the district court reasonably concluded that C.H.'s broken tooth was significant enough to support a finding of great bodily harm.  *See State v. Bridgeforth*, 357 N.W.2d 393, 394 (Minn. App. 1984) (concluding that a lost tooth was sufficient to establish great bodily harm), *review denied* (Minn. Feb. 6, 1985).  This finding that C.H.'s broken tooth amounted to a "serious permanent disfigurement" remains reasonable despite the fact that she later had the tooth repaired.  *See Anderson*, 370 N.W.2d at 706 (rejecting the argument that "a scar is not 'permanent' because it could be

9

concluded from [the complainant's] testimony that she was considering having it removed by plastic surgery").

The district court also concluded that C.H. suffered protracted loss of the function of her tooth and her rib cage, which amounted to "great bodily harm." Viewing the evidence of C.H.'s broken tooth in the light most favorable to the conviction, the district court reasonably concluded that C.H. experienced protracted loss of the function of her tooth. *See Bridgeforth*, 357 N.W.2d at 394. The district court also heard evidence that C.H. continued to suffer rib pain throughout the year between the assault and trial. Viewing this evidence in the light most favorable to the conviction, the district court reasonably concluded that C.H. experienced, and was still experiencing a year after the assault, protracted loss of the function of her rib cage.

The state presented sufficient evidence to support Aleman's first-degree assault conviction.

## II. Aleman was not denied the right to present a defense when his request to subpoena and recall C.H. was denied.

Criminal defendants have the right to call and examine witnesses in their defense. *See State v. Quick*, 659 N.W.2d 701, 715 (Minn. 2003) ("A defendant has a constitutional right to present a defense, which includes the right to offer the testimony of witnesses so that the defense can present its version of the facts to the jury."). "The district court has wide discretion to regulate the presentation, examination, and conduct of defense witnesses." *State v. Hannon*, 703 N.W.2d 498, 505 (Minn. 2005). This includes the decision whether to permit a litigant to recall a witness. *See State v. Collins*, 276 Minn.

10

459, 473, 150 N.W.2d 850, 860 (1967) (allowing prosecutor to recall witnesses to provide rebuttal testimony was proper exercise of discretion), *cert. denied*, 390 U.S. 960 (1968).

"Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citations omitted). When the district court's evidentiary "ruling results in the erroneous exclusion of defense evidence in violation of the defendant's constitutional rights, the verdict must be reversed if there is a reasonable possibility that the verdict might have been different if the evidence had been admitted." *State v. Graham*, 764 N.W.2d 340, 351 (Minn. 2009) (quotation omitted). "When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt if the jury's verdict was 'surely unattributable' to the error." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) (citations omitted); *see also Hannon*, 703 N.W.2d at 505 (noting that the state has the burden of proving that the error was harmless).

Harmless beyond a reasonable doubt means that "the reviewing court must be satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, . . . a reasonable jury . . . would have reached the same verdict." *State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994). But if there

is a reasonable possibility that the verdict might have been different if the evidence had been admitted, then the error is prejudicial. *Id.*

Aleman argues that, after hearing the testimony of the state's witness, R.N. Blowers, he did not believe C.H.'s tooth could have been broken by a head-butt without causing bleeding in her mouth. Because C.H. did not have bleeding in her mouth associated with the broken tooth, Aleman argues that he should have been permitted to recall her to explain how this was possible. Aleman argues that the lack of bleeding inside C.H.'s mouth made it "clear that [C.H.'s] allegation of a head-butt may not be believable." Aleman claims that because the district court allowed him to recall two out of three other local law enforcement witnesses, an effort facilitated by the prosecutor, it was a more egregious error to prevent him from recalling C.H. Aleman also argues that the error in failing to allow him to recall C.H. was not harmless.

Aleman cross-examined C.H. about her injuries and being head-butted. Nothing in C.H.'s testimony, or in the testimony of any witness other than Aleman, suggested that C.H.'s tooth was not damaged in the way she claimed. C.H. is not a medical professional and is not qualified to provide information regarding the force or angle necessary for a head-butt to damage a tooth without causing bleeding in her mouth. The state presented a significant amount of evidence in support of the conclusion that Aleman broke C.H.'s tooth during the assault, and that a head-butt was the immediate cause. The district court did not abuse its discretion by not allowing Aleman to recall C.H.

Furthermore, allowing Aleman a second opportunity to question C.H. would not have provided evidence sufficient to merit reversal of his conviction. Even if C.H. had

12

been recalled and had testified that a head-butt should have caused bleeding in her mouth, all evidence pointed to Aleman as the perpetrator of the assault and to the assault as the cause of C.H.'s broken tooth. If there had been error in denying Aleman the opportunity to recall C.H., it would have been harmless beyond a reasonable doubt.

## III. Aleman's pro se argument regarding the credibility of C.H.'s trial testimony lacks merit.

Assigning weight and credibility to witness testimony is an exclusive function of the fact-finder. *Dale v. State*, 535 N.W.2d 619, 623 (Minn. 1995); *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). In his pro se supplemental brief, Aleman argues that this court must reverse all three of his convictions because C.H.'s testimony was untruthful. Aleman points to two statements C.H. made during trial which he considers to be inconsistent with her other testimony. Neither of those statements pertain to the injuries C.H. suffered, nor to Aleman's culpability. Aleman provides no legal authority that supports his argument. The district court found C.H.'s testimony credible and relied on it when it convicted Aleman of the charged offenses. This court will not reverse Aleman's convictions based on a bare assertion that the district court erred in making a credibility determination.

**Affirmed.**

13